*997 OPINION.
MaRqtjette:
Tbe first issue presented for decision is whether the petitioner is entitled to have depreciation on the patents and buildings which it acquired from E. S. Evans <& Co. computed on cost to it, or on the same basis as when owned by the transferor. It is entitled to use the basis of cost to it (section 204 (a) and (c) of the Revenue Acts of 1924 and 1926) unless section 204 (a) (7) of these acts applies. Both parties concede that the transfers and transactions between E. S. Evans & Co., The Corporation, and the petitioner constituted a reorganization within the meaning of section 203 (h) of these revenue acts. It is clear that the petitioner acquired the property of E. S. Evans & Co. after December 31, 1917, and that it acquired the property in connection with a reorganization. Piedmont Financial Co., 26 B.T.A. 1221.
The question then is whether E. S. Evans remained in control of the petitioner immediately after the transfer of the property from E. S. Evans & Co. to it. It is not essential that Evans should retain control for any length of time. It is sufficient that he was momentarily in control. Federal Grain Corp., 18 B.T.A.. 242. As shown by our findings, every act involved in reorganization had been completed before 11 a.m. on December 31, 1923. All the transfers had then been made. Evans owned all the stock of The Corporation, which owned all the stock of the petitioner, which, in turn, had already acquired the property of E. S. Evans & Co.
Up to this point neither E. W. Bassick nor the Bassick-Alemite Corporation had any contractual relations with any one of the three corporations. Neither was in any way a party to the reorganization or concerned therewith. The only contract was for the purchase of stock which belonged to Evans. So far as the record discloses Bas-sick was concerned only with the purchase of the 51 percent interest in the business. Evans would have been unable to complete his contract with Bassick if he had not retained either ownership or control of the stock which he had contracted to sell. After reorganization was complete, Evans was able to deliver under his personal contract because, and only because, he had, through his ownership of The Corporation, control of the stock of the petitioner, which owned the business which was, in fact, the subject matter of the sale.
In our opinion immediately after the transfer of the property of E. S. Evans & Co. to petitioner, E. S. Evans, who owned all the stock of the transferor, was in control of the petitioner, and the determination of the respondent in this respect is approved. *998 (Schmieg, Hungate & Kotzian, Inc., 27 B.T.A. 337.) West Texas Refining & Development Co., 25 B.T.A. 1254, on which, the petitioner relies, is not in point. There the corporations involved were parties to the reorganization.
We have found that the factory buildings transferred by E. S. Evans & Co. resulted in the crediting to his account of the sum of $51,436, thereby reducing his indebtedness to the company by that amount, and we have found that these buildings had a fair replacement value of the same amount. Under these facts we are of the opinion that the factory buildings cost the company $51,436, and that the petitioner is entitled to depreciation on the buildings at that cost. A question is raised as to the cost of patents transferred by E. S. Evans to E. S. Evans & Co. It is evident from the testimony that by far the larger part of the value we have found to adhere to the patents and licenses is to be attributed to the contract between the Studebaker Corporation and the Copony Auto Loading Co. on the one hand, and E. S. Evans <⅞ Co. on the other. This contract cost the company nothing. Evans himself testified that the patents which he transferred to E. S. Evans & Co. just prior to the reorganization were minor improvements on the basic patents covered by the contract. Under these circumstances it is impossible for us to find what part, if any, of the indebtedness of Evans which was released to him had any relation to the patents transferred by him to the company. It is evident that the credits made to Evans’ account with respect to the patents were mere bookkeeping entries which had no relation whatever to the value or cost of the patents. In the absence of any evidence as to the cost of such patents we are unable to determine a proper basis for depreciation.
Certain adjustments to income have been stipulated between counsel for the respective parties and these adjustments will be taken into consideration on final settlement.
Reviewed by the Board.

Judgment will be entered under Bule 50.