## BASSICK v. COMMISSIONER OF INTERNAL REVENUE.*

### PERKINS v. SAME.

#### Nos. 35, 36.

Circuit Court of Appeals, Second Circuit.

July 6, 1936.

Louis B. Eppstein, of New York City (Louis B. Eppstein, Ira W. Hirshfield, and Louis J. Altkrug, all of New York City, of counsel), for petitioners.

Frank J. Wideman, Asst. Atty. Gen., and Sewall Key and Helen R. Carloss, Sp. Assts. to the Atty. Gen., for respondent.

Before MANTON, SWAN, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

These two petitions are similar, and will be considered in one opinion.

Deficiencies were charged against the respective petitioners for their income tax returns for 1923. The issue is whether the provisions of section 202 of the Revenue Act of 1921, c. 136, 42 Stat. 227, 229, require that a gain shall be recognized on a transaction in 1923 whereby the petitioners secured in exchange for common stock of the Bassick Company cash, bonds, and promissory notes admittedly the equivalent of cash, and certificates of deposit and voting trust certificates representing shares of the common stock of Bassick-Alemite Corporation.

The Bassick Manufacturing Company, a Delaware corporation, had 15,000 shares of its common stock outstanding. Fesler & Overton owned 5,000 of these, and the remaining 10,000 shares were owned by the Bassick Company, a Connecticut corporation. Both petitioners were stockholders of the latter company, and Bassick was also its president. In 1922 Bassick entered into negotiations with the Central Securities Company of Chicago, Ill., and made tentative arrangements whereby a new corporation was to be organized having 200,000 shares of no-par value common stock and an authorized issue of 5,000,000 of prefer-

*Writ of certiorari denied 57 S. Ct. 120, 81 L. Ed. ——. Rehearing denied 57 S. Ct. 230, 81 L. Ed. ——.

red stock. It was planned that the Central Securities Company was to cause the new corporation to acquire the 5,000 shares of the Bassick Manufacturing Company's common stock owned by Fesler and Overton, and that the new corporation was to acquire from or through Bassick not less than 90 per cent. of the Bassick Company common stock at $131.75 per share, to be paid, at the stockholder's option, all in cash or half cash and half common stock of the new company at $20 a share. It was further planned that the stock of the new company so received would be subject to limitations on its marketability, and, moreover, that 50,000 of the shares so received should be made subject to a voting trust agreement which was to cover in like manner 50,000 shares which the Central Securities Company was to acquire. During December, 1922, Bassick, in order to be in a position to carry out this plan, secured commitments from the stockholders of Bassick Company which recited the plan as outlined above and indicated that the stockholder would sell his shares at $131.75 and his preference as to payment therefor, all in cash or half cash and half stock. Bassick also got an option for the Central Securities Company to buy the 5,000 shares of the Bassick Manufacturing Company owned by Fesler & Overton.

With these commitments as his basis, Bassick contracted with the Central Securities Company January 27, 1923, to organize a new corporation to acquire at least 95 per cent. of the common stock of the Bassick Company and 5,000 shares of the Bassick Manufacturing Company. This new company was to be capitalized as proposed and was to issue $1,250,000 in ten-year serial notes. Bassick agreed to assign to the new corporation the stock of the Bassick Company for 147,500 shares of its common stock and the $1,250,000 in notes, and the Central Securities Company agreed to transfer the 5,000 shares of the Bassick Manufacturing Company's stock for the remaining 52,500 shares of the new company's common stock. It was further agreed that, of the 147,500 shares of the new company issued for the Bassick Company's stock, the Central Securities Company would buy 65,000 shares at $20 a share, and also that they would take up the note issue of $1,250,000 by delivery of $1,050,000 in government bonds. A voting trust was to be set up in which 5,000 of the shares of the new corporation to be issued to the stockholders of the Bassick Company and

50,000 of the shares to be issued to the Central Securities Company should be held for five years with certificates to be issued therefor. All the remaining new stock, 32,499 shares, acquired by the Bassick Company's shareholders, was to be deposited under an agreement withholding possession until January 1, 1924, to keep it off the market.

On February 7, 1923, the new corporation, called Bassick-Alemite Corporation, was organized with an authorized capital of 200,000 shares of no-par common stock. On February 13, 1923, the directors of the Bassick-Alemite Company authorized the contract for the purchase of the shares of the Bassick Company on the terms previously agreed upon. This action was ratified by the Bassick-Alemite stockholders on the same day and the contract carried out. February 14, 1923, Central Securities Company and Bassick, for himself and the other stockholders of the Bassick Company, contracted with the voting trustees for the deposit, under the voting trust previously agreed upon, of 100,000 of the shares of new stock received or to be received by the parties. On the same day, Bassick deposited the stock and debentures of the Bassick-Alemite Company received by him with a trust company, instructing them to deliver the notes to the Central Securities Company for $1,050,000 in government bonds; to deliver 65,000 shares of the stock of the Bassick-Alemite Corporation to Central Securities Company for $1,300,000 in cash and their notes; to issue voting trust certificates for 5,000 according to the terms of the trust; and to issue certificates of deposit for the remainder of the shares pursuant to the agreement for depositing shares so received to keep them off the market until January 1, 1924.

These instructions were carried out, and the trust company distributed to the petitioner Bassick for his original 11,524 shares of Bassick Company stock $27 in cash, $506,500 in notes of the Central Securities Company, $421,400 in Liberty bonds, 30,801 voting trust certificates, and 3,717 certificates of deposit. Jessie S. Perkins likewise received her proportionate amount of cash and securities.

On February 15, 1923, the Bassick-Alemite Corporation issued 52,500 shares of its common stock in exchange for the 5,000 shares of Bassick Manufacturing Company to Central Securities Corporation pursuant to the agreed plan.

The petitioners contend that the transfer of Bassick Company stock to the Bassick-Alemite Corporation in exchange for that company's shares and notes was a tax-free exchange within section 202 (c) (3) of the Revenue Act of 1921 (42 Stat. 230), which provides that no gain or loss shall be recognized when "a person transfers any property, real, personal or mixed, to a corporation, and immediately after the transfer is in control of such corporation. * * * For the purposes of this paragraph, a person is * * * 'in control' of a corporation when owning at least 80 per centum of the voting stock and at least 80 per centum of the total number of shares of all other classes of stock of the corporation."

When the Bassick-Alemite Corporation transferred the 147,500 shares to Bassick, it had not yet issued its remaining common stock, so that Bassick was then the owner of 100 per cent. of the outstanding shares. He sold, as he was under obligation to sell, 65,000 of these shares to the Central Securities Company as part of the same transaction. Further, as part of the same plan, the Bassick-Alemite Corporation was then obligated to and did transfer to the Central Securities Company the remaining 52,500 shares of its authorized no-par common stock in exchange for the 5,000 shares of the Bassick Manufacturing Company stock held by the Central Securities Company. If either of these facts be given weight, Bassick and the stockholders he represented were not "in control" of the Bassick-Alemite Corporation, since he would not own 80 per centum of the transferee corporation "immediately after the transfer."

■ The transfer was not tax free. The Bassick-Alemite Corporation was not effectively organized until it had received the 5,000 shares of the Bassick Manufacturing Company for which it had to pay 52,500 shares of its own no-par common stock. If this had not been done, the organization of the new company and the transfer by Bassick would have been without purpose. The effective date of the new corporation's organization was the date when the pre-arranged program of acquiring the stock of both the Bassick Company and the Bassick Manufacturing Company had been carried out. Halliburton v. Com'r, 78 F.(2d) 265 (C.C.A. 9). For income tax purposes, the component steps of a single transaction cannot be treated separately. Prairie Oil & Gas Co. v. Motter, 66 F.(2d) 309 (C.C.A. 10); West Texas Refining & Development Co. v. Com'r, 68 F.(2d) 77 (C.C.A. 10); Ahles Realty Corp. v. Com'r, 71 F.(2d) 150 (C.C.A. 2).

It is further to be noted that the stockholders were bound before the receipt of the 147,500 shares to sell 65,000 to the Central Securities Company. These shares were never delivered to the Bassick Company shareholders; Bassick deposited them with a trust company for delivery according to the prearranged plan for $1,300,000. This fact, as well as the fact that Bassick-Alemite had not been effectively organized at the date the petitioner would have us consider, would be sufficient to hold that this sale did not come within section 202 (c) (3) of the Revenue Act of 1921.

In American Compress & Warehouse Co. v. Bender, 70 F.(2d) 655 (C.C.A. 5), cert. denied, 293 U.S. 607, 55 S.Ct. 123, 79 L.Ed. 698, nothing appears to show any connection between the sale of the stock of the new corporation received by the transferor corporation and the transaction between the transferor and the transferee. The mere fact that only a short time intervened between the receipt of the stock and the sale of it by the transferor cannot, of course, limit the transferee to the use of a depreciation base grounded on cost to the transferor. However, so far as this case and Evans Products Company v. Com'r, 29 B.T.A. 992, affirmed without opinion Jan. 15, 1936 (C.C.A.6), certiorari denied, 298 U.S. 675, 56 S.Ct. 940, 80 L.Ed. 1397, may be said to hold that the taxpayer's single transaction must be stopped for tax purposes at an intermediate step we must decline to follow them.

■ In fixing the amount of the deficiencies, the Commissioner used a value of $20 apiece for the certificates of deposit and voting trust certificates received by petitioners to represent their rights in their shares of Bassick-Alemite Corporation stock. The petitioners argue that the Commissioner, and the Board of Tax Appeals in sustaining him, were in error in using this basis, and that these certificates had no readily realizable market value under section 202 (e) and article 1564, Reg. 62 of the 1921 act, and that the tax should have been computed according to the first clause of section 202 (e) of the Revenue Act of 1921 as amended March 4, 1923, c. 294, 42 Stat. 1560. It is to be noted that, of the Bassick-Alemite Corporation's 200,000 shares of no-par common stock, 32,499 shares were

impounded and certificates of deposit issued therefor, 10,000 shares were held in a voting trust, and voting trust certificates were issued to the holders, and the remainder, 67,500 shares, were free stock. This free stock was marketed by a syndicate and sold at $36–$37.50 per share by April 20, 1923, after opening on the Chicago Stock Exchange in February, 1923, at $27.50 a share.

The voting stock trust certificates were transferable, and dividends paid on the stock were to be distributed to the holders of these certificates. Petitioners state that the Central Securities Company had caused these shares to be deposited under the voting trust for the express purpose of keeping them off the market. No support for this position is found, but, on the contrary, the trust agreement recites that the shares were deposited in order to provide a method of controlling the company so as to secure safe management. There is no ground upon which we may disturb the Board's finding that the voting trust certificates had a readily realizable market value of $20 each.

The certificates of deposit represented shares which the stockholders had deposited under an agreement providing that the stock should not come into the possession of the holders thereof prior to January 1, 1924, without the written consent of the Central Securities Company to the end that the stock should not be thrown upon the market for sale in the interim.

In the first part of these negotiations in which the stockholders participated, they were given the option of accepting cash or shares of stock at $20 each, with limitations on their marketability to be fixed later. Furthermore, it is stipulated that on March 1, 1923, Bassick received $20 a share from 73 old employees of the Bassick Company under an arrangement to allow them a participation in the Bassick-Alemite stock. Another stipulated fact is that in April, 1923, the syndicate marketing the free shares offered to purchase certificates of deposit up to a maximum of 10,000 shares at $32, and several of the stockholders accepted this offer and sold their certificates at this price. We accept the finding of the fact that the security had a readily realizable market value, for it has substantial evidence to support it and should not be reversed. See Old Mission Portland Cement Co. v. Helvering, 293 U.S. 289, 294, 55 S.Ct. 158, 79 L.Ed. 367; Helvering v.

Rankin, 295 U.S. 123, 131, 55 S.Ct. 732, 79 L.Ed. 1343; Grifiths v. Com'r, 70 F.(2d) 946 (C.C.A. 7).

The decisions are affirmed.