*Decision will be entered under Rule 50.*

WILGARD REALTY COMPANY, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 101534. Promulgated February 12, 1941.

*David A. Fraser, Esq.,* for the petitioner.
*J. P. Wenchel, Esq.,* for the respondent.

558

OPINION.

ARUNDELL: The issue for decision is whether on the sale of the property described above on February 18, 1937, the petitioner realized gain in the amount of $15,075.02, as determined by respondent, or sustained a capital loss, as claimed by petitioner, in the sum of $51,-450.04. The difference in these positions springs from their opposed views on the method by which the basis of the property in petitioner's hands is to be determined. The respondent contends that the transfer of the property by Chamberlin on August 6, 1932, in return for more than 80 percent of petitioner's stock was an exchange under section 112 (b) (5) of the Revenue Act of 1932, the property in such case retaining the transferor's basis in the transferee's hands, as directed by section 113 (a) (8) of that act. The parties agree that the transferor's basis, the fair market value on March 1, 1913, was $65,041.67 after adjustment for depreciation. Respondent computes capital gain by first adding to this base improvements costing $11,398.59 and deducting from that total depreciation allowed and allowable from March 1, 1913, to February 17, 1937, reaching a basis on the later date of $34,999.94, adjusted for depreciation. From the sale price of $19,000 and the $35,000 mortgage assumption he deducts selling expense of $3,925.04 to determine a net realization on the property of $50,074.96. The difference, $15,075.02, he contends is the measure of petitioner's gain.

Petitioner's argument is that the transfer of the property on August 6, 1932, in return for petitioner's stock was not an exchange within section 112 (b) (5) of the Revenue Act of 1932, since the transaction, viewed as a whole, resulted in the control of the corporation greatly disproportionate to the contributions of the holders of interests in that company. Alternatively, it argues that its assumption on August 6, 1932, of the $35,000 mortgage indebtedness as part consideration for the transfer of the property was equivalent to the payment of money, thus taking the transaction out of section 112 (b) (5), which applies only to the transfer of property "solely in exchange for stock or securities." Section 213 (f) (1) of the Revenue Act of 1939, which brings transfers of this sort within section 112 (b) (5), it contends is unconstitutional because of its great retroactive application. On either argument petitioner contends that the basis of the property in its hands is its fair market value on August 6, 1932, which the parties agree to have been $110,000. Petitioner

computes loss by deducting from this basis $8,475 for depreciation to reach an adjusted basis of $101,525. From a sales price of $19,000 cash plus the $35,000 mortgage debt assumed by the purchaser, petitioner deducts selling costs of $3,925.04 to reach a net return on the property of $50,074.96. The difference, $51,450.04, petitioner argues to be the measure of its loss.

The issue thus framed requires the determination of whether the transfer of August 6, 1932, falls outside the orbit of section 112 (b) (5) of the Revenue Act of 1932 either (1) because the transaction viewed as a whole did not vest control of the transferee corporation in the transferor and created interests disproportionate to the contributions to the company, or (2) because a portion of the consideration passing in the exchange, the assumption of the mortgage, was the equivalent of money and nullifies the applicability of section 112 (b) (5), which is restricted to exchanges where only stock passes from the transferee corporation. This latter issue involves the question of the constitutionality of section 213 (f) (1) and (2) of the Revenue Act of 1939, which by specific provision brings exchanges of property for stock and the assumption of indebtedness within section 112 (b) (5). In the event petitioner is sustained in either argument it is agreed that on the transfer of August 6, 1932, the property acquired a new basis in petitioner's hands equal to the fair market value of the property on that date. The petitioner's arguments will be considered in the order in which they are enumerated.

(1) The solution of the first contention lies in the determination of whether the transfer of petitioner's stock by Chamberlin to his brother and children was a part of the transaction by which the petitioner acquired the property in question in exchange for its stock. In certain instances the exchange contemplated by section 112 (b) (5) has been held to include portions of the transaction which took place after the bare exchange between the parties when they constituted an integral part of a preconceived plan of corporate exchange or adjustment, *Von's Investment Co. Ltd.* v. *Commissioner*, 92 Fed. (2d) 861; 111 Fed. (2d) 440; *Diescher* v. *Commissioner*, 110 Fed. (2d) 90; *Portland Oil Co.* v. *Commissioner*, 109 Fed. (2d) 479. Thus in *Bassick* v. *Commissioner*, 85 Fed. (2d) 8; certiorari denied, 299 U. S. 592; *Heberlein Patent Corporation* v. *United States*, 105, Fed. (2d) 965; and *Columbia Oil & Gas Co.*, 41 B. T. A. 38, where the transferors of property, who received in return from the transferee more than 80 percent of its stock, were obligated by a contract, entered into previously for the development and promotion of the properties transferred, to turn over a substantial portion of the stock received to third parties, the courts, viewing the whole of these dealings as "com-

ponent steps in a single transaction", have declined to treat them separately. In consequence such a series of transactions ultimately vesting control of the transferee corporation in parties who transferred no property to that company have been held outside section 112 (b) (5). See also *Hazeltine Corporation* v. *Commissioner*, 89 Fed. (2d) 513.

In each of the cases cited above control of the transferee corporation through ownership of 80 percent of its stock, at some point in the dealings involved, rested in the transferor of the property, who was nevertheless obligated by contract to set over a portion of the stock to outsiders. But this control was held insufficient to satisfy the statute under the principles made plain in *Commissioner* v. *Schumacher Wall Board Corporation*, 93 Fed. (2d) 79, 81:

> The statute is obviously intended to reach those cases where unfettered, substantial control of a corporation survives a reorganization, regardless of the subsequent disposition of that control. We do not believe it was intended to apply to a situation where there is a binding contract simultaneously performed, by which the stock merely passes through intermediate holders to those to whom the contract compels immediate delivery.

Petitioner contends that the situation here is akin to these cases and that the result should be the same. The conveyance of petitioner's stock to Chamberlin's brother and children, it is argued, was a component part of the exchange and the complete transaction therefore vested control in persons other than the transferor, defeating the applicability of section 112 (b) (5). This argument misses the significance of the cases cited. Here there was no plan of exchange or readjustment of which the conveyance to Chamberlin's children was a part. Here the control vested in Chamberlin after the bare exchange was "unfettered", "substantial", and free of any obligation resting on the transferee to share that control with others. His immediate conveyance of the stock as a gift was a transaction in no way that has been shown to us connected with the exchange between petitioner and Chamberlin.

In these circumstances there is no basis for holding that the exchange and the conveyance cohere as steps in a plan of corporate exchange or adjustment, and the applicability of the cases relied on by the petitioner must be denied. The exchange here in question therefore must be viewed as completed with the issuance of 197 shares of petitioner's stock to the transferor of the property. Control was thus vested in him through an ownership substantially commensurate with his contribution. The transaction therefore clearly falls within section 112 (b) (5) unless objections raised by petitioner under the second head of his argument are sustained.

(2) Petitioner's second argument is that section 213 (f) of the Revenue Act of 1939[1] is unconstitutional because of its retroactive operation which results in denying to it a loss deduction sustained on a transaction completed in 1937. The effect of the 1939 statute, says the petitioner, is to reach back more than two years and tax a transaction on which at the time it was consummated there was not only no income but a loss.

The petitioner is in a rather poor position to complain against the effect of the section 213 of the Revenue Act of 1939. When the petitioner acquired the property in 1932 neither it nor its controlling stockholder regarded the assumption of indebtedness as giving rise to gain or loss or as affecting the basis. By the enactment of section 213 in the 1939 Act Congress has, in effect, merely validated the method used by the parties to the 1932 exchange in reporting the effect of that transaction, and now requires that they accept the consequences of the method of reporting they then chose.

The purpose of section 213 is simply to effect what had always been the intent back of the exchange and reorganization provisions in the several revenue statutes, beginning with the Act of 1918. That intent has always been not to exempt a gain from tax, but to effect "a postponement of tax until the gain is realized by a pure sale or by such an exchange as amounts to a pure sale." *David B. Gann,* 23 B. T. A. 999; affd., 61 Fed. (2d) 201. The original exchange was regarded by the parties thereto as one postponing the taxation of gain to either party until actual realization through sale. Perhaps they were wrong in so regarding it, but there was reasonable ground for that view. It was not until 1936, in *Brons Hotels, Inc.,* 34 B. T. A. 376, that this Board

---

[1] SEC. 213. ASSUMPTION OF INDEBTEDNESS.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(f) ASSUMPTION OF LIABILITY NOT RECOGNIZED UNDER PRIOR ACTS.—

(1) Where upon an exchange occurring in a taxable year ending after December 31, 1923, and beginning before January 1, 1939, the taxpayer received as part of the consideration property which would be permitted by subsection (b) (4) or (5) of section 112 of the Revenue Act of 1938, or the corresponding provisions of the Revenue Act of 1924 or subsequent revenue Acts, to be received without the recognition of gain if it were the sole consideration, and as part of the consideration another party to the exchange assumed a liability of the taxpayer or acquired from the taxpayer property subject to a liability, such assumption or acquisition shall not be considered as "other property or money" received by the taxpayer within the meaning of subsection (c), (d), or (e) of section 112 of the Revenue Act of 1924 or subsequent revenue Acts, and shall not prevent the exchange from being within the provisions of subsection (b) (4) or (5) of section 112 of the Revenue Act of 1938, or the corresponding provisions of the Revenue Act of 1924 or subsequent revenue Acts; except that if, in the determination of the tax liability of such taxpayer for the taxable year in which the exchange occurred, by a decision of the Board of Tax Appeals or of a court which became final before the ninetieth day after the date of enactment of the Revenue Act of 1939, or by a closing agreement, gain was recognized to such taxpaper by reason of such assumption or acquisition of property, then for the purposes of section 112 of the Revenue Act of 1938, and corresponding provisions of the Revenue Act of 1924 or subsequent revenue Acts, such assumption or acquisition (in the amount of the liability considered in computing the gain) shall be considered as money received by the taxpayer upon the exchange.

(2) Paragraph (1) shall be effective with respect to the Revenue Act of 1924 and subsequent revenue Acts as of the date of enactment of each such Act.

held that the assumption of indebtedness must be treated as money. We thereby overruled earlier cases holding the other way. Even after *United States* v. *Hendler*, 303 U. S. 564, there was doubt as to the effect of assumption alone. In *Bickford's, Inc.* v. *Commissioner*, 98 Fed. (2d) 568, the Circuit Court of Appeals for the Second Circuit took the view that assumption alone, without a showing of payment of the assumed debt, was not equivalent to payment of property or money so as to increase basis. The effect of the 1939 Act is merely to bring order out of this chaos and to establish a uniformly applicable basis which would result in taxation of gains to all alike at the time of actual realization. We see no difference in principle between the situation here and one wherein Congress taxes all gains realized in one year, even though a part of such gain was attributable to a period when such gain was not taxable. See *MacLaughlin* v. *Alliance Insurance Co. of Philadelphia*, 286 U. S. 244. In that case the Court said:

\* \* \* Congress, having constitutional power to tax the gain, and having established a policy of taxing it, see *Milliken* v. *United States*, 283 U. S. 15, 22, 23; 51 S. Ct. 324; 75 L. Ed. 809, may choose the moment of its realization and the amount realized, for the incidence and the measurement of the tax. Its failure to impose a tax upon the increase in value in the earlier years, assuming without deciding that it had the power, cannot preclude it from taxing the gain in the year when realized, any more than in any other case, where the tax imposed is upon realized, as distinguished from accrued, gain.

In this case, the effect of section 213 (f) is merely to make certain, by fixing a definite basis, the taxation of gains in the year of actual realization. In this view, the retroactivity of which the petitioner complains is not fatal to the legislation.

The final argument which is made, that the act was not intended to apply to sales completed before 1939, is without merit. Plainly on its face the statute is made to apply to all exchanges completed during the period 1923–1939, with minor exceptions, and there is no basis for reading into it the limitation claimed by petitioner.

*Decision will be entered for the respondent.*