S. Klein on the Square, Inc., Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 21097.   Promulgated May 9, 1950.

*Bertram Harnett, Esq.*, for the petitioner.
*Rigmor O. Carlsen, Esq.*, for the respondent.

#### OPINION.

Murdock, *Judge*: The Commissioner determined the following deficiencies in the excess profits tax of the petitioner: For the period April 16 to September 30, 1944, $40,707.81; and for the fiscal year ended September 30, 1945, $90,342.73.

The petitioner assigns as error the action of the Commissioner in computing the depreciation deduction for each taxable period upon the basis of cost instead of on the adjusted basis of the Klein estate, and in failing to compute its excess profits credit on income pursuant to sections 713 and 742.   The facts have been stipulated.

The petitioner filed its returns for the periods in question with the collector of internal revenue for the third district of New York.

Samuel Klein, as sole proprietor, operated a widely known ready-to-wear business at 14 Union Square, New York, New York, under the trade names, "S. Klein" and "S. Klein on the Square" for many years and until his death on November 15, 1942.   Klein left a will. Aaron J. Simon and Charles Fredericks, as Klein's executors, continued to operate the store business on behalf of the estate until the business was acquired by the petitioner.

Klein left the residue of his estate in trust for his ten daughters, sisters, and brothers.   He directed his executors to incorporate his business and provided that the business could not be sold without the consent of the adult beneficiaries entitled to receive the income under his will.

The Surrogate's Court, pursuant to an application of the executors,

granted the executors the authority to sell the Union Square business without the consent of the adult beneficiaries under the will and also gave them authority to disregard the direction in the will for the incorporation of the business.

Herbert Daniel Stone, the husband of one of Klein's daughters, acting on behalf of the children, brothers, and sisters of Klein, made an offer to the executors either to purchase the business and transfer it to a corporation or to buy the stock and debentures of a corporation to be formed by the executors and to which the executors would transfer the business. The purchase price was to be $1,000,000, subject to possible adjustments. The stock and debentures were to be issued as indicated by Stone. He gave a check for $100,000 in connection with his offer. Other offers were also received, but an amended offer by Stone to buy the stock of a corporation to be formed by the executors was accepted. The order of the court was in part as follows:

ORDERED AND DECREED that the Executors be and they hereby are directed to sell the business * * * to the members of the testator's family, in accordance with the last modified offer submitted by Herbert Daniel Stone on their behalf * * *.

The executors entered into an agreement with Stone on April 6, 1944, whereby the executors agreed to organize the petitioner and transfer the business to it, with exceptions appearing below. The agreement recited that the buyer had theretofore paid the executors $100,000, was to pay another $100,000 upon the execution of the agreement, and the balance of $800,000 on or before April 11, 1944, subject to adjustments. The only provision in the agreement for the issuance of any stock was as follows:

The sellers agree that the corporation, when organized, will issue to them 4,000 shares of Class A stock and that upon the date of closing they will deliver to the buyer a certificate or certificates evidencing such 4,000 shares of stock, duly endorsed in blank, as well as the corporate stock book, minute book, stock register, and all other papers of the corporation, including the resignation of all the directors and officers of the corporation.

The petitioner was incorporated on April 6, 1944, and the executors executed a bill of sale on April 11, 1944, transferring the Klein business to it. The total value of the assets of the store immediately prior to the transfer was $1,833,934.12. They were subject to liabilities in the amount of $1,184,031.53, which the petitioner did not assume. About $840,000 in cash and $85,813.34 in receivables of the business were retained by the executors.

The following securities and stock of the petitioner were issued to the executors on April 15, 1944:

$800,000 in principal amount of debentures
2,000 shares of preferred stock, nonvoting
4,000 shares of class A common, with voting power to elect three directors

4,000 shares of class B common, with voting power to elect three directors
1,500 shares of class C common, with voting power to elect one director
1,500 shares of class D common, with voting power to elect one director
1,500 shares of class E common, with voting power to elect one director
1,500 shares of class F common, with voting power to elect one director

The stock certificates issued to the executors were subsequently endorsed in blank. The certificates were canceled on October 10, 1944, and new certificates were issued thereafter either to the persons or the nominees of the persons who were represented by Stone. They had entered into an agreement with him dated April 3, 1944, whereby they indicated precisely their subscriptions to the various classes of stock which were subsequently issued by the petitioner. Those parties were not the same as the ten children, sisters, and brothers of Klein mentioned in his will; that is, they did not include three of the latter, but did include nineteen other persons related in some degree to Klein.

Apparently the purchase price was paid.

The Commissioner, in determining the deficiencies, disallowed $1,007.13 of a deduction for depreciation claimed in the amount of $7,724.36 for the period ended September 30, 1944, thus allowing a deduction of $6,717.23, and disallowed $5,202.88 of a deduction for depreciation claimed in the amount of $20,685.88 for the fiscal year ended September 30, 1945.

The parties have stipulated that the amount allowable as a deduction for depreciation for the period ended September 30, 1944, is $7,724.36, "If the acquisition by the corporation of the assets from the executors qualified under Section 112 (b) (5) of the Internal Revenue Code," but the amount is $6,717.23 if the basis of the property transferred is its cost to the petitioner.

They have also stipulated that the amount allowable as a deduction for depreciation for the period ended September 30, 1945, is $22,700.15, "If the acquisition by the corporation of the assets from the executors qualified under Section 112 (b) (5) of the Internal Revenue Code," but the amount allowable is $20,685.88 if the basis of the property transferred is its cost to the petitioner.

The Commissioner, in determining the deficiencies, computed the excess profits net income under the invested capital credit method, and he explained that the petitioner did not qualify as an acquiring corporation within the meaning of section 740 and, therefore, was not entitled to have its excess profits credit computed on the basis of income. The amount of the excess profits credit based on income to which the petitioner is entitled for each period if it qualifies as an acquiring corporation under section 740 has been stipulated.

The basis of property for the purpose of computing depreciation deductions is its basis for gain or loss as fixed by section 113. Secs. 23 (n) and 114. The general rule of section 113 is that the basis of

property shall be its cost to the taxpayer. One of the exceptions is that the basis of property acquired by a decedent's estate from the decedent shall be the fair market value of the property at the time of that acquisition. Sec. 113 (a) (5). That gives the property in the hands of the executors a basis equal to the value at which it was included in the decedent's gross estate for estate tax purposes. See section 811. The property here in question was acquired by the estate of Samuel Klein, represented by his executors, from Samuel Klein at the time of his death. The basis of that property in the hands of the executors was thus its fair market value at the date of the death of Klein. The petitioner acquired the property from the Klein estate.

Property in the hands of a corporation retains the same basis as it had in the hands of the transferor if the transfer was one coming within section 112 (b) (5). That provision is entitled "Transfer to Corporation Controlled by Transferor" and covers a transfer of property by one or more persons to a corporation solely in exchange for stock or securities in such corporation where, immediately after the exchange, the transferors are in control of the corporation. The petitioner, relying upon those provisions, claims that it is entitled to use, as its basis for depreciation of certain of its property, the basis which that property had in the hands of the Klein executors.

The theory of the petitioner is that the executors transferred property to it solely in exchange for stock or securities of the petitioner and immediately after the exchange the executors were in control of the petitioner. Control in this connection means the ownership of stock possessing at least 80 per cent of the total combined voting power of all classes of stock entitled to vote and at least 80 per cent of the total number of shares of all other classes of stock of the corporation. Sec. 112 (h). The agreement between Stone and the executors seems to have provided that only 4,000 shares of class A stock were to be issued, those shares were to be issued to the executors, and the executors would then transfer them to Stone. The next step apparently was for Stone, then being in control of the corporation, to have it issue its other shares in accordance with the agreement of the subscribers dated April 3. However, the petitioner actually issued more than 4,000 shares to the executors, but this deviation from the agreement and the question of what happened to the debentures have no particular significance in the decision of this case.

The circumstance fatal to the contention of the petitioner is that the petitioner was organized, the Klein property was transferred to it, and its shares issued, all in accordance with a bid made by Stone and to carry out an agreement between the executors and Stone, representing himself and others. That plan and agreement was obviously not complete until the executors transferred the stock to Stone, or to

Stone and his associates. Ownership of the stock of the petitioner was in the executors in name only, and that temporarily, as a mere intermediate step in an integrated plan under which they were required, from the very beginning, to transfer the stock to the purchasers or their representative, who had already paid $200,000 on account of the purchase price at the time the petitioner was organized. The variety in the authorized stock was designed to meet the desires of the purchasers. The steps of the plan, at least to the point where the shares went out of the ownership of the executors, were so inseparable and interdependent that the acceptance of the bid and the agreement would have been vacuous had the ownership stopped there. The transfer of the shares by the executors to Stone and his associates was not an independent transaction as to which the executors had any further choice. They were bound by the accepted bid and the agreement and, having received a part of the purchase price, had no alternative but to transfer title to the stock. The question of control, in applying section 112 (b) (5), depends upon the situation existing at the completion of a plan such as this, rather than at some intermediate stage which necessarily must be followed by another. *Wilbur F. Burns*, 30 B. T. A. 163; affd. *sub nom. Bassick* v. *Commissioner*, 85 Fed. (2d) 8; certiorari denied, 299 U. S. 592; *West Texas Refining & Development Co.* v. *Commissioner*, 68 Fed. (2d) 77, affirming 25 B. T. A. 1254; *Hazeltine Corporation* v. *Commissioner*, 89 Fed. (2d) 513, affirming on this point 32 B. T. A. 4. The petitioner's contention, if otherwise sound, must, nevertheless, fail because the essential control was lacking. The use of cost in computing the deductions for depreciation has not been proved erroneous.

The remaining issue for decision is whether the petitioner can use the income of Samuel Klein's business during the base period for the purpose of computing its excess profits credit. Here again the petitioner's contention is based upon the application of section 112 (b) (5). It claimed, under the first issue, that it acquired the assets from the Klein estate by a transfer coming within section 112 (b) (5), so that it could use the Klein estate basis, whereas it now claims that it acquired them from Klein in a transaction coming within section 112 (b) (5) so that it can use the base period income of the sole proprietor Klein. It would regard the executors of Samuel Klein as Samuel Klein for present purposes and, thus, it makes exactly the same argument on the question of control on this issue that it made on the first issue. The decision of the Court on that point is that the control necessary to support the petitioner's argument is lacking.

Furthermore, the petitioner's contention fails for another reason which is in no way precluded from the consideration of the Court. The code allows the base period net income of a "component corpo-

ration" to be used in computing the excess profits credit of an "acquiring corporation." Secs. 741 and 742. The petitioner contends that it was an acquiring corporation and the sole proprietorship business of Samuel Klein was a component corporation. An "acquiring corporation" is defined in section 740 (a) (1) (D) and (h) to include one which has acquired substantially all the properties of a business owned by a sole proprietor in an exchange to which section 112 (b) (5) was applicable. A "component corporation" is defined in section 740 (b) (5) to include the sole proprietor who "transferred the assets." The property referred to is that which a corporation acquired from the sole proprietor in an exchange to which section 112 (b) (5) was applicable. The petitioner, relying upon those provisions, contends that it acquired substantially all the properties of Samuel Klein, a sole proprietor, in an exchange to which section 112 (b) (5) was applicable, and concludes that it can use the base period income of Samuel Klein's business for the purpose of computing its excess profits credit.

However, the petitioner did not acquire any property from Samuel Klein. Samuel Klein died before the petitioner was formed and without having transferred to the petitioner any of the assets of the business which he conducted as a sole proprietor. He did not transfer those properties to anyone, but when he died his estate acquired them within the meaning of section 113 (a) (5). The estate did not take Klein's basis, but the property in the hands of the estate had a new basis, its fair market value at the date of Klein's death. The estate was, under the provisions of the Internal Revenue Code, a different taxpayer from Klein. Subch. C, Supp. E, I. R. C. The estate, acting through the executors, carried on the business for more than a year and four months and then transferred the properties in question to the petitioner, as the petitioner contended under the first issue. Thus, Samuel Klein, doing business as a sole proprietor, did not transfer property to the petitioner and was not a component corporation within the meaning of the code section cited above. The petitioner would not be entitled to use the base period income of Samuel Klein's business in computing its excess profits tax credit, even if section 112 (b) (5) did apply to the transfer by the Klein executors. Cf. *E. T. Renfro Drug Co.*, 11 T. C. 994.

The petitioner cites no direct authority for regarding the executors of Samuel Klein as the equivalent of Samuel Klein for present purposes. The detailed and precisely formulated provisions which Congress employed in Subchapter E, Supplement A, precludes the adoption of any such interpretation of its provisions. See, for example, section 740 (g), under which, as the petitioner concedes, Samuel Klein, operating as a sole proprietor, would not qualify as a "component corporation of a component corporation" consisting of his estate. Cf.

*E. T. Renfro Drug Co., supra.* It was probably not accidental that Congress allowed the use of "component" base period income only where the taxpayer also took the same basis on the transferred property as the "component" had had, adjusted only for any recognized gain or loss in the exchange or exchanges. Congress indicated just how far it would go, and that is not far enough to allow this petitioner to use the base period income of Samuel Klein, operating as a sole proprietor. This Court has no authority to extend the law which Congress has enacted, even though it is a relief provision.

Reviewed by the Court.

*Decision will be entered under Rule 50.*