**S. KLEIN ON THE SQUARE, Inc. v. COMMISSIONER OF INTERNAL REVENUE.**

No. 151, Docket 21820.

United States Court of Appeals, Second Circuit.

Argued Feb. 14, 1951.

Decided April 4, 1951.

Bertram Harnett, of New York City (Sidney I. Roberts, of New York City, on the brief), for petitioner.

Irving I. Axelrad, Special Asst. to Atty. Gen. (Theron Lamar Caudle, Asst. Atty. Gen., and Ellis N. Slack and Lee A. Jackson, Special Assts. to Atty. Gen., on the brief), for respondent.

Before CHASE, CLARK, and FRANK, Circuit Judges.

CLARK, Circuit Judge.

Petitioner-taxpayer, S. Klein on the Square, Inc., is the corporate successor to a clothing and ready-to-wear business at 14 Union Square, New York City, operated by its founder, Samuel Klein, as sole proprietor until his death on November 15, 1942. Petitioner, in computing its excess profits taxes for the period from its start of business on April 16, 1944, until the end of its fiscal year on September 30, 1945, took an excess profits credit based upon the average base period of the business for the four years 1936–1939. This is the permitted period if the present business has the necessary legal continuity with the old. The Commissioner ruled, however, that it did not have such continuity, and,

allowing a credit based only upon petitioner's own profits after incorporation, assessed deficiencies of $40,707.81 in the 1944 tax and $90,342.73 in the 1945 tax. These determinations the Tax Court upheld in a reasoned decision by Judge Murdock, approved by the entire court. 14 T.C. 786. We think that this was right.

The facts, which were stipulated, showed the following circumstances. In his will Samuel Klein directed his executors to incorporate the store and perpetuate his name. The store formed part of the residue of the estate, which went into a trust fund whose beneficiaries were Klein's ten daughters, sisters, and brothers. The will also contained a provision that the executors could not sell the property unless a majority of the adult income beneficiaries gave their approval in writing. But this requirement became a stumbling block when the executors and Klein's family disagreed on the terms of incorporation. Hence in 1943 the executors petitioned the Surrogate of New York County for authority to proceed without such approval. The authority was granted on March 7, 1944.

On April 3, 1944, Klein's son-in-law Herbert D. Stone, representing the family throughout, agreed with them to try to raise $1,000,000 to buy the stock of the anticipated corporation. On April 5, 1944, Klein's executors executed a certificate of incorporation for petitioner and the following day filed it with the Secretary of the State of New York. On the latter date the executors and Stone agreed on a proposal previously submitted in outline to the Surrogate's Court. By this the parties to the April 3 agreement, acting through Stone, were to pay $1,000,000 for the stock of the new corporation: $100,000 at the time of the bid in the Surrogate's Court, $100,000 at the time of the April 6 agreement, and $800,000 on or before April 11, 1944. The executors agreed to deliver to Stone 4,000 shares of Class A stock, endorsed in blank, immediately upon the closing of the transaction; this was the only mention of the corporate stock in the agreement. As a matter of fact, however, on April 15 the executors and petitioner's directors in substance exchanged the store's

assets for *all* the stock in the corporation, of which there were several classes. The record does not show whether or not the $800,000 still due was actually paid; but the Tax Court said it "apparently" was, and we shall so assume. The executors continued to hold the stock issued to them, but subsequently endorsed in blank, until October 10, 1944, when new certificates were issued either to the persons or to the nominees of persons who were represented by Stone. The transferees were a wider group of persons than those who had entered into the fund-raising agreement of April 3; they did not include three of the original group of ten mentioned in Klein's will, but did include nineteen other persons related in some degree to Klein.

Petitioner contends that a continuity exists between a decedent and his estate such that a corporation acquiring property from his executors has acquired it from the decedent himself within the meaning of the governing statute, I.R.C. § 740(a)(1)(D), 26 U.S.C.A. § 740(a)(1)(D). That statute, in defining "acquiring corporations" who are permitted to use their predecessors' profits as tax bases, states: "The term 'acquiring corporation' means * * A corporation which has acquired * * substantially all the properties of a partnership in an exchange to which section 112 (b)(5) * * * is or was applicable." Since under a further provision, I.R.C. § 740(h), 26 U.S.C.A. § 740(h), "a business owned by a sole proprietorship shall be considered a partnership," it is conceded that Samuel Klein's proprietorship qualifies him as a partnership for the application of the section. So petitioner argues that it comes directly within the statutory provision through its acquisition of the business from the executors representing Klein. It contends that the statute is a relief measure to be liberally construed, that "the standing in the place of a predecessor is the gist of Section 740(a)(1) (D)," and that the exchange between the executors and the corporation does satisfy I.R.C. § 112(b)(5), 26 U.S.C.A. § 112(b) (5), as further required by the quoted provision.

We think that petitioner fails on the last point at least. I.R.C. § 112(b)(5), 26 U.S.C.A. § 112(b)(5), provides: "No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; but in the case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange." The Tax Court has viewed the series of agreements involved here as substantially a single transaction resulting in a new corporation not controlled by the persons making the transfer of the property to the corporation. In so doing we think it was correct. It was not necessary to look to the different set of stockholders after the stock transfers of October 10, 1944; the original group represented by Stone who owned the stock under the April 3 agreement were not the persons making the transfer to the corporation. These were, instead, the executors who must "retain the same or practically the same interest after the transfer" for the provision to apply. West Texas Refining & Development Co. v. C. I. R., 10 Cir., 68 F.2d 77, 80. Since they were under an obligation to transfer the stock once they had received their consideration from the members of the family, or the subscribers to the April 3 agreement, they cannot be said to have been in "control" of the new corporation. Bassick v. C. I. R., 2 Cir., 85 F.2d 8, 10, certiorari denied 299 U.S. 592, 57 S.Ct. 120, 81 L.Ed. 436. It is settled that "the entire proceeding must be viewed as a single transaction." Halliburton v. C. I. R., 9 Cir., 78 F.2d 265, 267. Petitioner's contention that the control is largely immaterial because the statute is designed to benefit the corporation rather than its stockholders flies in the face of the reference to § 112(b)(5) explicitly incorporated into § 740(a)(1)(D). Perhaps it is unfortunate that statutory provisions looking at the same transaction

from different viewpoints are thus tied together, but that is the clear Congressional intent. And we cannot remake the statute to provide for its possibly more equitable operation. See E. T. Renfro Drug Co. v. C. I. R., 5 Cir., 183 F.2d 846, certiorari denied 71 S.Ct. 491.

The Tax Court also relied on another ground vigorously pressed here by the respondent, namely, that the interposition of the executors—by operation of law of course—between the succession from Klein to the petitioner prevents the application of § 740(a)(1)(D) in any event. Here the arguments of the two parties before us hardly meet. For respondent does not directly discuss petitioner's claim that the executors are an extension of Klein's own personality; instead it treats the executors as an intermediate holder so that it can speak of Klein as a "transferor, twice removed" from petitioner. So it argues with some force that executors of a deceased do not come easily within the statutory language as either an acquiring or a component corporation as there defined. The answer is possibly not as clear as thus suggested, though the absence of explicit language in a statute thus detailed is certainly an argument for the government's position. E. T. Renfro Drug Co. v. C. I. R., supra. But since the direct issue could only have arisen here had the executors received petitioner's stock free of obligation to the Stone group, we need not consider it further.

Decision affirmed.