INTERMOUNTAIN LUMBER COMPANY AND SUBSIDIARIES, TREE FARMERS, INC., S & W SAWMILL, INC., CLARKS FORK CO., AND MISSOULA PRES-TO-LOGS CO., PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

THE INTERMOUNTAIN COMPANY AND SUBSIDIARIES, TREE FARMERS, INC., AND S & W SAWMILL, INC., PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 7084-72, 1406-74.     Filed February 23, 1976.

*John R. McInnis* and *Sherman V. Lohn,* for the petitioners.
*Craig D. Platz,* for the respondent.

OPINION

Section 351 provides, in part, that no gain shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation and immediately after the exchange such person or persons are in control of the corporation.[2] "Control" is defined for this purpose in section 368(c) as ownership of stock possessing at least 80 percent of the total combined voting power of all classes of stock entitled to vote and at least 80 percent of the total number of shares of all other classes of stock of the corporation.[3]

---

[2] SEC. 351. TRANSFER TO CORPORATION CONTROLLED BY TRANSFEROR.

(a) GENERAL RULE.—No gain or loss shall be recognized if property is transferred to a corporation * * * by one or more persons solely in exchange for stock or securities in such corporation and immediately after the exchange such person or persons are in control (as defined in section 368(c)) of the corporation. * * *

[3] SEC. 368. DEFINITIONS RELATING TO CORPORATE REORGANIZATIONS.

In this case, respondent is in the unusual posture of arguing that a transfer to a corporation in return for stock was nontaxable under section 351, and Intermountain is in the equally unusual posture of arguing that the transfer was taxable because section 351 was inapplicable. The explanation is simply that Intermountain purchased all stock of the corporation, S & W, from its incorporators, and that Intermountain and S & W have filed consolidated income tax returns for years in issue. Accordingly, if section 351 was applicable to the incorporators when S & W was formed, S & W and Intermountain must depreciate the assets of S & W on their consolidated returns on the incorporators' basis. Sec. 362(a).[4] If section 351 was inapplicable, and the transfer of assets to S & W was accordingly to be treated as a sale, S & W and Intermountain could base depreciation on those returns on the fair market value of those assets at the time of incorporation, which was higher than the incorporators' cost and which would accordingly provide larger depreciation deductions.[5] Secs. 167(g), 1011, and 1012.[6]

Petitioner thus maintains that the transfer to S & W of all of S & W's property at the time of incorporation by the primary incorporator, one Dee Shook, was a taxable sale. It asserts that

(c) CONTROL.—For purposes of * * * this part [including sec. 351], the term "control" means the ownership of stock possessing at least 80 percent of the total combined voting power of all classes of stock entitled to vote and at least 80 percent of the total number of shares of all other classes of stock of the corporation.

[4] SEC. 362. BASIS TO CORPORATIONS.

(a) PROPERTY ACQUIRED BY ISSUANCE OF STOCK OR AS PAID-IN SURPLUS.—If property was acquired on or after June 22, 1954, by a corporation

(1) in connection with a transaction to which section 351 (relating to transfer of property to corporation controlled by transferor) applies, or

(2) as paid-in surplus or as a contribution to capital,

then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain recognized to the transferor on such transfer.

[5] Petitioner would also benefit from increased net operating loss deductions and increased investment credits.

[6] SEC. 167. DEPRECIATION.

(g) BASIS FOR DEPRECIATION.—The basis on which exhaustion, wear and tear, and obsolescence are to be allowed in respect of any property shall be the adjusted basis provided in section 1011 for the purpose of determining the gain on the sale or other disposition of such property.

SEC. 1011. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS.

The adjusted basis for determining the gain or loss from the sale or other disposition of property, whenever acquired, shall be the basis (determined under section 1012 or other applicable sections of this subchapter * * *

SEC. 1012. BASIS OF PROPERTY—COST.

The basis of property shall be the cost of such property * * *

section 351 was inapplicable because an agreement for sale required Shook, as part of the incorporation transaction, to sell almost half of the S & W shares outstanding to one Milo Wilson over a period of time, thereby depriving Shook of the requisite percentage of stock necessary for "control" of S & W immediately after the exchange.

Respondent, on the other hand, maintains that the agreement between Shook and Wilson did not deprive Shook of ownership of the shares immediately after the exchange, as the stock purchase agreement merely gave Wilson an option to purchase the shares. Shook accordingly was in "control" of the corporation and the exchange was thus nontaxable under section 351.

Respondent has abandoned on brief his contention that Wilson was a transferor of property and therefore a person to also be counted for purposes of control under section 351. Respondent is correct in doing so, since Wilson did not transfer any property to S & W upon its initial formation in July of 1964. Wilson's agreement to transfer cash for corporate stock in March of 1965 cannot be considered part of the same transaction.

Since Wilson was not a transferor of property and therefore cannot be counted for control under section 351, *William A. James,* 53 T.C. 63, 69 (1969), we must determine if Shook alone owned the requisite percentage of shares for control. This determination depends upon whether, under all facts and circumstances surrounding the agreement for sale of 182 shares between Shook and Wilson, ownership of those shares was in Shook or Wilson.

A determination of "ownership," as that term is used in section 368(c) and for purposes of control under section 351, depends upon the obligations and freedom of action of the transferee with respect to the stock when he acquired it from the corporation. Such traditional ownership attributes as legal title, voting rights, and possession of stock certificates are not conclusive. If the transferee, as part of the transaction by which the shares were acquired, has irrevocably foregone or relinquished at that time the legal right to determine whether to keep the shares, ownership in such shares is lacking for purposes of section 351. By contrast, if there are no restrictions upon freedom of action at the time he acquired the shares, it is immaterial how soon thereafter the transferee elects to dispose of his stock or whether such disposition is in accord with a preconceived plan not amounting

to a binding obligation. *Stephens, Inc. v. United States,* 464 F. 2d 53, 66-67 (8th Cir. 1972), cert. denied 409 U.S. 1118 (1973); *Barker v. United States,* 200 F. 2d 223, 229 (9th Cir. 1952); *S. Klein on the Square, Inc.,* 14 T.C. 786, 789-790 (1950), affd. 188 F. 2d 127, 129 (2d Cir. 1951), cert. denied 342 U.S. 824 (1951); *American Bantam Car Co.,* 11 T.C. 397, 404-408 (1948), affd. per curiam 177 F. 2d 513 (3d Cir. 1949), cert. denied 339 U.S. 920 (1950); *Wilgard Realty Co.,* 43 B.T.A. 557, 561 (1941), affd. 127 F. 2d 514, 516 (2d Cir. 1942), cert. denied 317 U.S. 655 (1942); *Schumacher Wall Board Corp.,* 33 B.T.A. 1211, 1214 (1936), affd. 93 F. 2d 79, 81 (9th Cir. 1937); *Wilbur F. Burns,* 30 B.T.A. 163, 171-172 (1934), affd. sub nom. *Bassick v. Commissioner,* 85 F. 2d 8, 10 (2d Cir. 1936), cert. denied 299 U.S. 592 (1936); *Federal Grain Corp.,* 18 B.T.A. 242, 248-249 (1929).

After considering the entire record, we have concluded that Shook and Wilson intended to consummate a sale of the S & W stock, that they never doubted that the sale would be completed, that the sale was an integral part of the incorporation transaction, and that they considered themselves to be coowners of S & W upon execution of the stock purchase agreement in 1964. These conclusions are supported by minutes of the first stockholders meeting on July 7, 1964, at which Shook characterized the agreement for sale as a "sale"; minutes of a special meeting on July 15, 1964, at which Shook stated Wilson was to "purchase" half of Shook's stock; the "Agreement for Sale and Purchase of Stock" itself, dated July 15, 1964, which is drawn as an installment sale and which provides for payment of interest on unpaid principal; Wilson's deduction of interest expenses in connection with the agreement for sale, which would be inconsistent with an option; the S & W loan agreement, in which Shook and Wilson held themselves out as the "principal stockholders" of S & W and in which S & W covenanted to equally insure Shook and Wilson for $100,000; the March 1965 stock purchase agreement with S & W, which indicated that Shook and Wilson *"are* to remain *equal"* (emphasis added) shareholders in S & W; the letter of May 1967 from Shook and Wilson to Intermountain, which indicated that Wilson owed Shook the principal balance due on the shares as an unpaid obligation; and all surrounding facts and circumstances leading to corporate formation and execution of the above documents. Inconsistent and self-serving testimony of Shook and Wilson

regarding their intent and understanding of the documents in evidence is unpersuasive in view of the record as a whole to alter interpretation of the transaction as a sale of stock by Shook to Wilson.

We accordingly cannot accept respondent's contention that the substance varied from the form of this transaction, which was, of course, labeled a "sale." The parties executed an "option" agreement on the same day that the "agreement for sale" was executed, and we have no doubt that they could and indeed did correctly distinguish between a sale and an option.

The agreement for sale's forfeiture clause, which provided that Wilson forfeited the right to purchase a proportionate number of shares for which timely principal payments were not made, did not convert it into an option agreement. Furthermore, the agreement for sale made no provision for forgiving interest payments on the remaining principal due should principal payments not be made on earlier dates; indeed, it specifically provided that "Interest payment must always be kept current before any delivery of stock is to be made resulting from a payment of principal."

We thus believe that Shook, as part of the same transaction by which the shares were acquired (indeed, the agreement for sale was executed before the sawmill was deeded to S & W), had relinquished when he acquired those shares the legal right to determine whether to keep them. Shook was under an obligation, upon receipt of the shares, to transfer the stock as he received Wilson's principal payments. Cf. *S. Klein on the Square, Inc.,* 14 T.C. 786, 790 (1950), affd. 188 F. 2d 127 (2d Cir. 1951), cert. denied 342 U.S. 824 (1951). We note also that the agreement for sale gave Wilson the right to prepay principal and receive all 182 shares at any time in advance. Shook therefore did not own, within the meaning of section 368(c), the requisite percentage of stock immediately after the exchange to control the corporation as required for nontaxable treatment under section 351.

We note also that the basic premise of section 351 is to avoid recognition of gain or loss resulting from transfer of property to a corporation which works a change of form only. See Bittker & Eustice, Federal Income Taxation of Corporations and Shareholders, par. 3.01, p. 3-4 (3d ed. 1971). Accordingly, if the transferor sells his stock as part of the same transaction, the transaction is taxable because there has been more than a mere

change in form. See, e.g., *Wilbur F. Burns,* 30 B.T.A. 163 (1934), affd. sub nom. *Bassick v. Commissioner,* 85 F. 2d 8 (2d Cir. 1936), cert. denied 299 U.S. 592 (1936). In this case, the transferor agreed to sell and did sell 50 percent of the stock to be received, placed the certificates in the possession of an escrow agent, and granted a binding proxy to the purchaser to vote the stock being sold. Far more than a mere change in form was effected.

We accordingly hold for petitioner. Because of concessions of other issues,

*Decisions will be entered under Rule 155.*