Stephen J. Kaczmarek v. Commissioner.
Kaczmarek v. Commissioner
Docket Nos. 83945 and 88106.
United States Tax Court
T.C. Memo 1962-131; 1962 Tax Ct. Memo LEXIS 175; 21 T.C.M. (CCH) 691; T.C.M. (RIA) 62131; May 31, 1962
John W. Burke, Esq., for the petitioner. Ronald S. Schacht, Esq., for the respondent. SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined deficiencies in petitioner's income tax for the years 1955 and 1956 in the amount of $16,815.13 and $17,000, *176 respectively. The deficiencies, insofar as the issue here presented is involved, are alternative and respondent concedes that if his position is sustained as to either year, it should not be sustained as to the other. The issue for decision is whether petitioner realized a net long-term capital gain in the amount of $68,000 by the transfer of certain real property to a corporation, and, if so, whether the gain was realized in 1955 or 1956. Findings of Fact Some of the facts have been stipulated and are found accordingly. Petitioner is an individual who, during the years 1955 and 1956, resided at College Point, New York. He filed his Federal income tax returns for the years 1955 and 1956 with the district director of internal revenue at Brooklyn, New York on April 11, 1956, and April 9, 1957, respectively. In 1941 petitioner purchased a parcel of real property at a cost of $4,500 and subsequently made capital improvements thereto, increasing the basis to him of this property to $7,000. Title to the property was taken in petitioner's name. There were two dwellings located on the property, and from 1942 to 1953 petitioner and his family occupied the larger of the dwellings. *177 Thereafter, this dwelling was not occupied. The smaller dwelling has not been occupied since 1941. In 1954 petitioner became interested in developing the property as commercial property. He believed that the property could profitably be utilized for a gasoline service station. Petitioner consulted the law firm of Dimond and Robinson with respect to this utilization of the property and they suggested that petitioner utilize the entire plot for some business purpose rather than a portion of it for a gasoline station. Petitioner retained Dimond and Robinson at an agreed fee of $500 plus disbursements to represent him in attempting to obtain a zoning classification of the property as "business" property. The agreed upon fee was paid by petitioner in advance. In the spring of 1955 the application for a change in the zoning classification of the property was denied, and Robinson, who had handled the matter, advised petitioner that since the entire area in which his property was located was undergoing a change, that at a later date an application to change the zoning classification of petitioner's property should receive favorable action. Late in the year 1955 Robinson advised petitioner *178 that in his opinion a second application could be made for the zoning variation. Petitioner informed Robinson that he lacked funds to pursue the application further but proposed an arrangement which resulted in an agreement being executed between petitioner and Dimond and Robinson on November 29, 1955. This agreement recited that petitioner owned real property, giving a description thereof, and that he was "desirous of having the aforementioned real property rezoned to business and has retained the parties of the second part to handle said legal proceeding." The agreement then recited that petitioner and Dimond and Robinson were mutually agreed that if the property were rezoned to business, it would be necessary to create a holding corporation to promote and develop the property to its fullest extent and that both parties felt that they would be mutually benefitted by the formation of a holding corporation by the name of K.R.D. Holding Corp., and further provided that the parties agreed to the following: 1. That the party of the first part shall transfer the title to the aforementioned premises to the said K.R.D. HOLDING CORP. 2. That the parties of the second part will perform *179 all legal services except litigation for the said K.R.D. HOLDING CORP. 3. That in the event the real property aforementioned is not rezoned to business within one year from the date of this agreement that the said K.R.D. HOLDING CORP. will transfer this title to said premises back to Stephen J. Kaczmarek, party of the first part. 4. That the party of the first part shall have 75% of the stock of said K.R.D. HOLDING CORP. and that the parties of the second part shall have 25% of the stock of said K.R.D. HOLDING CORP. between them. Simultaneously with the signing of this agreement, the parties executed a proposed certificate of incorporation which had been prepared by Dimond and Robinson for K.R.D. Holding Corp. According to the certificate of incorporation, petitioner subscribed for six shares of stock, and Dimond and Robinson subscribed for one share each. On December 1, 1955, the certificate was filed with the Secretary of State of New York, and on December 15, 1955, the first meeting of the stockholders was held at which time Dimond and Robinson each executed an assignment of their incorporators' subscriptions to petitioner. During the early part of December Robinson prepared *180 and assembled all papers required for a zoning application, and petitioner verified the zoning petition on December 17, 1955. On January 15, 1956, a corporate meeting was held to discuss the zoning application. On February 21, 1956, Robinson appeared before the town board in behalf of petitioner in connection with the zoning application, and on March 28, 1956, the application for rezoning was granted. On April 6, 1956, petitioner conveyed title to the rezoned property to K.R.D. Holding Corp. Due to disagreement between the parties nothing further was done regarding the improvement of the property. It was petitioner's understanding that Dimond and Robinson were to arrange leases, arrange for buildings being placed upon the property, and acquire the necessary mortgages. One of the most serious disagreements between petitioner and Dimond and Robinson concerned granting an exclusive brokerage contract. Dimond and Robinson wanted to hire a broker and petitioner rejected the idea of paying a broker, contending that this was one of the services which Dimond and Robinson were to perform. In 1956 Dimond and Robinson were having differences of opinion with respect to their partnership *181 for the practice of law. Robinson understood that he and Dimond were obligated by their agreement of November 29, 1955, with petitioner to contact developers with respect to placing buildings upon the property and to arrange for financing of the development of the property and for tenants. Robinson talked with Dimond about developing the property in this manner but when Dimond did not proceed with the work connected therewith Robinson did not go forward himself with the work. By October 1957, petitioner had not been presented with any concrete proposition from a prospective tenant, purchaser, or builder. In January 1958 petitioner sought the advice of another attorney, and in April 1958 an arrangement worked out by this attorney with Dimond and Robinson was agreed to between them and petitioner. In accordance with this agreement Dimond and Robinson, for the consideration of $2,000 each, executed a general release dated April 18, 1958, to petitioner and K.R.D. Holding Corp. On April 18, 1958, Dimond and Robinson also each resigned as a director of K.R.D. Holding Corp. The $4,000 paid to Dimond and Robinson was paid by two checks on petitioner's personal bank account dated April 18, 1958, each *182 in the amount of $2,000, one payable to Dimond and the other to Robinson. The certificate of incorporation of K.R.D. Holding Corp. stated that the total number of shares that may be issued is 200, all of which are to be without par value. Robinson never requested the issuance of stock to him by K.R.D. Holding Corp. and never received any such stock. He did not consider that he had rendered the services required to become entitled to such stock, and he considered the $4,000 paid to him and Dimond by petitioner to be a reasonable fee for the work he did with respect to the rezoning application for the property. No stock certificates in K.R.D. Holding Corp. were ever issued to anyone. The property which petitioner transferred to K.R.D. Holding Corp. on April 6, 1956, had a fair market value, both in 1955 and 1956, of $100,000. Petitioner did not report any gain or loss with respect to the transaction here involved on his income tax return for either 1955 or 1956, and neither of these returns contains any mention of the transaction. Respondent issued two deficiency notices to petitioner, one dated April 27, 1960, for the year 1955 in which he increased petitioner's income as *183 reported by $34,000 with the following explanation: It has been determined that you realized a net long-term capital gain in the amount of $68,000.00 from the transfer of real property for stock of K.R.D. Holding Corporation, which has been taken into account to the extent of 50% or $34,000.00. The other deficiency notice is dated August 10, 1959, and increases petitioner's reported income for the year 1956 by $34,000 with the explanation that: It has been determined that you realized a long-term capital gain in the amount of $68,000.00 which has been taken into account to the extent of 50% or $34,000.00. Opinion Section 351 of the Internal Revenue Code of 1954[1] provides for the nonrecognition of gain or loss resulting from a transfer of property to a corporation solely in exchange for stock or securities in such corporation if immediately after the transfer, the transferor is in control of the corporation as defined in section 368(c). Petitioner contends that he received nothing for his transfer of property to the corporation except his interest in the corporation and that immediately after his transfer of the property to the corporation he had 100 *184 percent control of the corporation, thus meeting the 80 percent control requirements of section 368(c). Respondent takes the position that the agreement entered into on November 29, 1955, between petitioner and Dimond and Robinson provided for one integrated transaction in creating the K.R.D. Holding Corp., and that under that agreement the rights of the parties were fixed with petitioner having only a 75 percent ownership and control of K.R.D. Holding Corp. and Dimond and Robinson having a 25 percent ownership for services rendered or to be rendered. Respondent argues that if this agreement is to be considered in effect to constitute the transfer of the *185 property to the corporation, his deficiency as determined for the year 1955 should be sustained, but takes the position that the better view is that the property was transferred to the corporation on April 6, 1956, when the petitioner conveyed title thereto to the corporation. Respondent argues that on April 6, 1956, the control of the corporation was governed by the pre-existing contract of November 29, 1955, under which he contends petitioner had less than the requisite 80 percent control. We think it clear from the provisions of the contract that petitioner "shall transfer" the title to the property to K.R.D. Holding Corp., that the agreement of November 29, 1955, did not constitute a disposition of the property by petitioner but rather an agreement to dispose of it, and that there was no disposition of the property until April 6, 1956. Cf. Hellman v. United States, 44 F. 2d 83 (Ct. Cl., 1930). The question, therefore, narrows to whether immediately after the transfer of this property on April 6 1956, petitioner had the requisite control of the corporation. On April 6, 1956, there was no stock of the corporation actually issued although petitioner at that time *186 held the subscription rights to the entire eight shares of stock set forth as the number of shares that the subscribers agreed to take in the certificate of incorporation. Respondent makes no argument that the fact that the certificates of stock has not been issued is determinative of the question in this case. To so argue would, in effect, defeat respondent's argument since the evidence shows that no certificates of stock were ever issued. As we stated in Federal Grain Corporation, 18 B.T.A. 242, 248 (1929): The mere fact that the certificates of stock were never actually reduced to possession by the individual transferors of the assets begs the question of ownership. It is not essential that stock certificates be issued at all in order to make one a stockholder. See Fletcher, Cyclopedia of Corporations, Permanent Edition, vol. 4, ch. 12, sec. 1375, and vol. 11, ch. 58, sec. 5094. It is respondent's position that as of April 6, 1956, at the time petitioner transferred the title to the property to the K.R.D. Holding Corp., and thereafter until April 18, 1958, the right to stock in the corporation was to the extent of 75 percent in petitioner and 25 percent in Dimond *187 and Robinson. Respondent bases his argument upon the contract of November 29, 1955, which he argues clearly and unambiguously supports his conclusion. Petitioner argues that the ownership of the corporation at the time the property was transferred on April 6, 1956, was represented by the ownership of the right to subscribe to the eight shares of stock set forth as the stock subscription agreed to by the incorporators in the certificate of incorporation, and since petitioner was the owner of the right to subscribe to the entire eight shares on April 6, 1956 and at all times thereafter, petitioner had 100 percent control of the K.R.D. Holding Corp. Respondent recognizes that both petitioner and Robinson testified that the intent of their agreement of November 29, 1955, was that Robinson and Dimond would not be entitled to the 25 percent interest in the K.R.D. Holding Corp. until they had performed services in connection with the property including the obtaining of leases, arranging for buildings to be placed on the property, and for the necessary mortgages. Respondent argues, however, that this testimony should be ignored since the written agreement of November 29, 1955, is unambiguous *188 and, therefore, should not be the subject of parol evidence. The controversy here is not between the parties to the agreement but between one of them and a third party which respondent does not discuss in his argument as to the application of the parol evidence rule. See Valdes v. Central Altagracia, 225 U.S. 58 (1912). In any event, we do not agree with respondent's view that the contract of November 29, 1955, is unambiguous. This contract recites that petitioner is desirous of having real property rezoned to business and has retained Dimond and Robinson to handle this legal proceeding. The agreement later recites that Dimond and Robinson "will perform all legal services except litigation for the said K.R.D. Holding Corp." We think that the contract is not clear either as to whether the services in connection with the rezoning proceeding were for petitioner or the corporation, or as to what is included in all legal services to be performed for the corporation. Under these circumstances, parol evidence as to the intent of the parties is permissible. The evidence shows that both petitioner and Robinson understood that the services contemplated for the corporation were *189 in connection with the obtaining of leases, financing, and development of the property. Furthermore, this testimony is supported by the value assigned for the services to be rendered which would appear to be highly excessive for merely pursuing the rezoning application and forming the corporation when compared to the $500 fee charged to petitioner for legal services for the first zoning application. Robinson testified that the general fee for the legal services of drafting the necessary papers for the formation of a simple corporation such as K.R.D. Holding Corp. would be approximately $150. That the intent of the parties to the contract of November 29, 1955, was for Dimond and Robinson to rended services in connection with development of the property before becoming entitled to receive 25 percent of the stock is further borne out by the fact that the contemplated transaction of issuance of certificates of stock in K.R.D. Holding Corp. on the basis of 75 percent to petitioner and 25 percent to Dimond and Robinson was never carried out. It is also borne out by the fact that immediately after the formation of the corporation Dimond and Robinson each assigned to petitioner his right to *190 subscribe to one share of the K.R.D. Holding Corp. stock, thus leaving petitioner as the sole stockholder of this corporation since he was the owner of the right to subscribe to all shares of stock for which the certificate of incorporation provided. We, therefore, agree with petitioner's contention that under his agreement with Dimond and Robinson, the latter were not to receive their 25 percent of the stock of K.R.D. Holding Corp. until they had performed services for the corporation in development of the property. It thus appears that immediately after petitioner's transfer of the property to K.R.D. Holding Corp., he had 100 percent control of that corporation. Cf. Scientific Instrument Co., 17 T.C. 1253, 1259 (1952), affirmed per curiam 202 F. 2d 155 (C.A. 6, 1953). This conclusion would dispose of the issue in this case favorably to petitioner unless respondent is correct in his argument that the agreement of November 29, 1955, provided for steps of a single indivisible transaction, so that one part thereof would be ineffectual without the other, and thus the control of the corporation should be considered in proportion to the provision as to stock *191 division contained in the agreement of November 99, 1955. Cf. American Wire Fabrics Corporation, 16 T.C. 607, 613 (1951), and S. Klein on the Square, Inc., 14 T.C. 786, 790 (1950), affirmed 188 F. 2d 127 (C.A. 2, 1951). One difficulty with acceptance of respondent's view that the contract of November 29, 1955, provided for an integrated transaction, one step in which was useless without the completion of all, is that, in fact, the provisions of this agreement were never carried out. After disagreement arose between the parties, they ultimately arrived at a settlement whereby petitioner personally paid to each Dimond and Robinson $2,000 and received a general release from them, both for himself and K.R.D. Holding Corp. Respondent argues that the giving of a release to K.R.D. Holding Corp. was a useless act if Dimond and Robinson had not performed any of the services for that corporation required by the agreement of November 29, 1955, and had therefore not become entitled to receive any of the corporation stock or obtained other rights against the corporation. However, viewed from respondent's position that Dimond and Robinson had performed *192 the required services of forming the corporation and obtaining the rezoning classification, which services respondent argues were performed for the corporation, it would have been equally as useless an act for Dimond and Robinson to give a release to petitioner personally since under respondent's arguments there would exist no obligation from petitioner personally to Dimond and Robinson. We accept the explanation given by Robinson in his testimony that the inclusion of K.R.D. Holding Corp. in the release was a matter of precaution on the part of petitioner's attorney, and he was willing to give a release to anyone against whom he believed he had no claim. In the 1958 settlement, it is logical that the attorney representing petitioner would want to obtain a release that was so broad that no question could remain that either petitioner or the corporation had any obligation to Dimond or Robinson. The very fact that the agreement of November 29, 1955, with respect to the division of stock between petitioner and Dimond and Robinson was never actually carried out, is indicative of the fact that this contract did not constitute an indivisible transaction, the steps of which were so interdependent *193 that one would have been fruitless without the completion of the others. Cf. Scientific Instrument Co., supra, at page 1260. Under the facts of this case, the organization of the corporation and the transfer thereto of the property by petitioner was not a useless act without Dimond and Robinson rendering the services contemplated by the contract of November 29, 1955. Cf. American Bantam Car Co., 11 T.C. 397, 407 (1948), affirmed per curiam 177 F. 2d 513 (C.A. 3, 1949), certiorari denied 339 U.S. 920 (1950). We hold that immediately after his transfer of property to K.R.D. Holding Corp. petitioner had 100 percent control of that corporation, that the transfer comes within the provisions of section 351(a) of the Internal Revenue Code of 1954, and that no gain is recognizable to petitioner on this transfer. Since it appears that some adjustments made by respondent in the year 1955 have not been placed in issue by petitioner. Decision will be entered under Rule 50. Footnotes
1. All references are to the Internal Revenue Code of 1954 unless otherwise stated. Sec. 351(a)↩ General Rule. - No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation and immediately after the exchange such person or persons are in control (as defined in section 368(c)) of the corporation. For purposes of this section stock or securities issued for services shall not be considered as issued in return for property.