Alexander L. Baris and Sylvia H. Baris, et al. [1] v. Commissioner. Baris v. Commissioner
Docket Nos. 2462-62 - 2475-62.
United States Tax Court
T.C. Memo 1965-182; 1965 Tax Ct. Memo LEXIS 145; 24 T.C.M. (CCH) 952; T.C.M. (RIA) 65182; June 30, 1965
*145 Upon the evidence, held: (1) Petitioners, members of 969 Realty Co., taxable at ordinary income rates on gain from sale of properties in 1958 to 969 Park Corp. (2) Petitioners, members of 108 East 82nd St., partnership, taxable at ordinary income rates on gain from sale of property. (3) Petitioners, members of K. & F. partnership, taxable at ordinary gain rates on gain from sale of property. (4) T. M. Greenberg realized ordinary income in 1958 from partnership, Koch & Gould. (5) Ely and Sonia Rabin realized ordinary income from sale of mortgage. (6) O. L. Tinklepaugh is not entitled to alleged business expense deductions in issue. Lawrence N. Friedland, Theodore M. Greenberg, and Paul V. Wolfe, 36 W. 44th St., New York, N. Y., for the petitioners. Eugene L. Wilpon, for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The respondent determined *147 deficiencies in income tax for the year 1958, as follows: Dkt. No.
Petitioner
Deficiency
2462-62
Baris
$ 3,226.58
2463-62
Engelstein
4,477.87
2464-62
Tinklepaugh
2,209.80
2465-62
Bernstein
624.57
2466-62
May
1,403.79
2467-62
Schraubstader
1,222.49
2468-62
Klein
$ 2,546.03
2469-62
Hamilton
2,625.61
2470-62
Greenberg
3,046.24
2471-62
Finkel
2,043.73
2472-62
Friedland
2,373.03
2473-62
Rabin
3,572.86
2474-62
Korein
22,558.30
2475-62
Hagen
2,817.28 The chief questions are as follows: (1) Whether for the year 1958, income received by each of the petitioners from a partnership, 969 Realty Company, is ordinary income or capital gain. (2) Whether for 1958, income received by the petitioner-partners from the partnership, 108 East 82nd Street, is ordinary income or capital gain. Under this issue the petitioners are Carl Schraubstader and William H. Hamilton, Docket Nos. 2467-62 and 2469-62. (3) Whether the members of the partnership, Sarah Korein and Noah Friedland, realized ordinary income or capital gain upon the sale of property at 4 East 89th Street. (4) Whether income received in 1958 by Theodore M. Greenberg, Docket No. 2470-62, is *148 ordinary income or capital gain. (5) Whether income from the sale in 1958 of the Hart Street mortgage by Ely Rabin, Docket No. 2473-62, is ordinary income or capital gain. (6) Whether Otto L. Tinklepaugh, Docket No. 2464-62, is entitled to deductions in 1958 in the amount of $381, or some lesser amount, as ordinary and necessary business expenses. The respondent, by amended answers, has made claims for increases in the deficiencies. Certain issues have been disposed of by the parties under stipulations in Docket No. 2470-62, Theodore M. Greenberg, et ux., and Docket No. 2472-62, Lawrence N. Friedland, et ux. Under Rule 50, effect will be given to the stipulations. In Docket No. 2475-62, Irving Hagen, respondent concedes that he is entitled to a deduction of $1,242.38 for business expenses in 1958. Findings of Fact Some of the facts have been stipulated. The facts are found as stipulated; the stipulations are incorporated herein by reference. The returns of the petitioners for 1958, joint or individual, were filed with the district director of internal revenue for the district in which each resided. Each resided in the New York City area. [2]
*149 Issue 1. 969 Park Avenue There are located at 969 Park Avenue and 107 East 82nd Street, New York City, two contiguous apartment buildings, constructed on 2 separate pieces of realty. The 2 properties are contiguous at the rear end of each piece. In 1957, all of the apartments in the buildings (which were operated as one apartment building) were occupied by tenants on a lease and rental basis. The main building is at 969 Park Avenue, with its separate entrance. The other building, with its entrance at 107 East 82nd Street, is a smaller, 3-story building. In 1957, the rents which could be charged were subject to the then existing rent control law of the State of New York. A real estate broker, Bernstein, in the firm of Brett, Wykoff, Potter & Hamilton, approached Sarah Korein in 1957 and told her that the 2 apartment properties could be purchased as a unit. A group of 21 individuals, including the 14 petitioners in these cases, became interested in purchasing the property. On June 21, 1957, a limited partnership was organized under the New York partnership law called the 969 Realty Company. There were 21 limited partners, 14 of whom are petitioners here Sarah Korein and Thedore *150 M. Greenberg were both general partners and limited partners (according to a stipulation of the parties) under the partnership agreement. The original percentage interest of each partner is set forth in the partnership agreement. The partnership was organized for the purpose of acquiring 969 Park Avenue and 107 East 82nd Street, the realty and the buildings. On July 1, 1957, the partnership acquired each piece of real estate and the building located thereon. The partners contributed $470,000 in cash to the capital of the partnership at its commencement. It is stipulated that the actual percentage interests of the 14 partners who are the petitioners here aggregated 59.72 percent, and that the interests of the rest of the partners, who are not petitioners, totaled 40.28 percent. Some of the partners held their interests in the name of a nominee. The following list sets forth the actual interest of each of the petitioners in the partnership, the interest being held in some instances in the name of a nominee: Actual
Dkt.
Percentage
No.
Petitioner
Interest
2462-62
Alexander L. Baris
2.12
2463-62
Harold Engelstein
4.00
2464-62
Otto L. Tinklepaugh
5.00
2465-62
Julius Bernstein
1.25
2466-62
Earle G. May
2.50
2467-62
Carl Schraubstader
2.50
2468-62
Edward Klein
5.00
2469-62
William H. Hamilton
5.00
2470-62
Theodore M. Greenberg
.85
2471-62
Irving Finkel
5.00
2472-62
Lawrence N. Friedland
.50
2473-62
Ely Rabin
5.00
2474-62
Sarah Korein
15.00
2475-62
Irving Hagen
6.00
14
59.72
7
others total percentage
40.28
Total percentage
100.00
*151 On September 9, 1957, 969 Realty Company made application to the State of New York Temporary State Housing Rent Commission, for increase of maximum rent. On April 28, 1958, the Commission issued an order denying the application. The application and the order are incorporated herein by reference. Shortly after the rent increase application was denied, the partners considered the possibility of disposing of the properties. The apartment building on each piece of realty was rented for dwelling purposes to various tenants from the time of acquisition on July 1, 1957, until October 31, 1958, at which time the partnership transferred both pieces of property, subject to certain mortgages and other liabilities, to the 969 Park Corporation in exchange for 36,812 shares of the capital stock of the corporation, which were all of the corporation's authorized, issued, and outstanding shares of stock. 969 Park Corporation (hereinafter called 969 Park, or the corporation) was organized under the laws of New York to acquire the premises at 969 Park Avenue and 107 East 82nd Street from 969 Realty Company, the partnership, and to operate the apartment buildings under a cooperative apartment plan. *152 It is stipulated that under a cooperative apartment plan, leases are given to tenants who are also stockholders in the corporation. The number of shares of stock which is allocated to the particular apartment acquired by the tenant-stockholder is determined on a basis of the rental value of all of the apartments in the building, as follows: All of the cash operating expenses and other charges for one year are estimated in a budget. The total sum of the cash requirements for one year is divided by the total number of shares issued to all of the tenant-stockholders. The result represents the allocation of the cash requirements to each share of stock. The amount of the annual rent to be paid for the use and occupancy of each apartment is then determined by multiplying the amount of the cash requirement allocated to each share by the number of shares of stock allocated to each apartment. Thus, for example, if the tenant-stockholder of apartment No. 35 holds 5 shares of stock for that apartment, and the annual cash requirements amounts to $60 per share, the annual charge for the use of the apartment for the particular year, under the budget, is $300. The foregoing was the substance of *153 the cooperative apartment plan adopted and followed by 969 Park Corporation. Pursuant to the above plan, 969 Park issued its 36,812 shares of capital stock in exchange for the 2 apartment properties. The report of the title closing on October 31, 1958, upon the sale of 969 Park Avenue and 107 East 82 Street, between 969 Realty Company, as seller, and 969 Park Corporation, as purchaser, contained a certification by the real estate firm of Brett, Wyckoff, Potter & Hamilton that of the 36,812 authorized shares of capital stock of 969 Park Corporation, 10,808 shares had been sold, i.e., had been sold prior to and as of October 31, 1958. The partnership, 969 Realty Company, had committed itself prior to October 31, 1958 (the date that titles to 969 Park Avenue and 107 East 82nd Street were transferred to 969 Park Corporation) to sell 10,808 shares of stock of 969 Park Corporation out of the 36,812 shares it was entitled to receive in exchange for the transfer of both properties to 969 Park Corporation. The total number of shares of stock sold by the partnership, 969 Realty Company, during each of the years 1958 through 1961, the total selling price in each year, and the average *154 price per share of the stock sold in each year, are as follows: Year of
Number of
Total Selling
Average
Sale
Shares Sold
Price
Price
1958
12,212
$ 355,725.00
$29.13
1959
17,476
488,559.75
27.96
1960
2,716
80,482.50
29.63
1961
4,408
131,425.00
29.82
Total
36,812
$1,056,192.25
$28.69
It is agreed that the fair market value of the 36,812 shares of stock of 969 Park Corporation, on the date the stock was received in consideration for the 2 pieces of property transferred to the corporation, was $28.69 per share, or $1,056,192.25. The adjusted basis to 969 Realty Company of both of the properties (969 Park Avenue and 108 East 82 Street) which were transferred to 969 Park Corporation, was $492,918.79. The gain realized by the partnership on the transfer of the properties to 969 Park Corporation was $563,273.46, which is the difference between the total value of the stock received, $1,056,192.25, and the adjusted basis of the 2 properties which were exchanged for the stock, $492,918.79. The respective shares of the gain in the amount of $563,273.46, of each of the 14 petitioners, who were partners, and the total share of the partners *155 and nominees who are not petitioners in these cases, are as follows: Dkt.
Share of
No.
Petitioner
Gain
2462-62
Alexander L. Baris
$ 11,941.40
2463-62
Harold Engelstein
22,530.94
2464-62
Otto L. Tinklepaugh
28,613.67
2465-62
Julius Bernstein
7,040.92
2466-62
Earle G. May
14,081.84
2467-62
Carl Schraubstader
14,081.84
2468-62
Edward Klein
28,163.67
2469-62
William H. Hamilton
28,163.67
2470-62
Theodore M. Greenberg
4,787.82
2471-62
Irving Finkel
28,163.67
2472-62
Lawrence N. Friedland
2,816.37
2473-62
Ely Rabin
28,163.67
2474-62
Sarah Korein
84,491.02
2475-62
Irving Hagen
33,796.42
Total share of gain of the 14
petitioners
$336,386.92
Total share of gain of other
partners
226,886.54
Total gain
$563,273.46
During 1958, 969 Realty Company sold 12,212 shares of the capital stock of 969 Park Corporation for a total consideration of $355,725. The partnership's basis for the 12,212 shares was $350,362.28. The partnership's expenses of the sale of 12,212 shares was $20,884.78. The partnership sustained a loss in 1958 on the sale of 12,212 shares of stock in the amount of $15,522.06, as follows: Basis of 12,212 shares
$350,362.28
Expenses of sale
20,884.78
$371,247.06
Sales price
355,725.00
Loss
$ 15,522.06
*156 The respective shares of the loss of $15,522.06 of each of the 14 petitioners, and the total share of the other partners and nominees who are not petitioners in these cases, are as follows: Dkt.
Share of
No.
Petitioner
Loss
2462-62
Alexander L. Baris
$ 329.07
2463-62
Harold Engelstein
620.88
2464-62
Otto L. Tinklepaugh
776.10
2465-62
Julius Bernstein
194.03
2466-62
Earle G. May
388.05
2467-62
Carl Schraubstader
388.05
2468-62
Edward Klein
776.10
2469-62
William H. Hamilton
776.10
2470-62
Theodore M. Greenberg
131.94
2471-62
Irving Finkel
776.10
2472-62
Lawrence N. Friedland
77.61
2473-62
Ely Rabin
776.10
2474-62
Sarah Korein
2,328.32
2475-62
Irving Hagen
931.32
Total share of loss of 14 pe-
titioners
$ 9,269.77
Total share of loss of other
partners
6,252.29
Total loss
$15,522.06
The partnership reported an operating loss in the amount of $45,275.01 on its partnership return for the taxable year 1958. The respondent reduced this loss by the amount of $5,080, which resulted from his disallowance of deductions taken for repairs and maintenance. The disallowance of the deduction to the extent of $5,080 *157 has been agreed to by the petitioners. The adjusted net operating loss of the partnership for the taxable year 1958 is $40,195.01. The respective shares of the net operating loss of 969 Realty Company for 1958 in the amount of $40,195.01, of the 14 petitioners, and the total share of the other partners and nominees who are not petitioners in these cases, are as follows: 1958 Operating
Docket
Loss of 969
Number
Petitioner
Realty
2462-62
Alexander L. Baris
$ 852.13
2463-62
Harold Engelstein
1,607.80
2464-62
Otto L. Tinklepaugh
2,009.75
2465-62
Julius Bernstein
502.44
2466-62
Earle G. May
1,004.88
2467-62
Carl Schraubstader
1,004.88
2468-62
Edward Klein
2,009.75
2469-62
William H. Hamilton
2,009.75
2470-62
Theodore M. Greenberg
341.65
2471-62
Irving Finkel
2,009.75
2472-62
Lawrence N. Friedland
200.98
2473-62
Ely Rabin
2,009.75
2474-62
Sarah Korein
6,029.25
2475-62
Irving Hagen
2,411.70
Total shares of petitioners in net
operating loss
$24,004.46
Total shares of other partners in
net loss
16,190.55
Total 1958 net operating loss of
969 Realty Company
$40,195.01
The partners contributed *158 cash in the total amount of $470,000 to the capital of the partnership, at its commencement (as stated hereinbefore). The partnership agreement provided that "After the distributions have been made, or are available to be made to all the partners herein, equal $470,000, then and from such time and thereafter throughout the continuance of this agreement, all funds available for distribution, excluding only profits derived from rental income, shall be allocated and distributed as follows: 1. 5 percent of such funds available for distribution shall be allocated and distributed to Brett, Wyckoff, Potter, Hamilton, Inc. 2. 2 1/2 percent of such funds available for distribution shall be allocated and distributed to Sarah Korein. 3. 92 1/2 percent of such funds available for distribution shall be allocated and distributed to each and every Limited Partner in the ratio that each partner's original contribution bears to the aggregate total of the original capital contributed by all of the partners." Petitioners Rabin, Korein, and Hagen, each, listed his occupation in his 1958 return as "real estate". At the time the partnership purchased the properties it intended to file for a hardship *159 claim to increase the rents. The partners anticipated a possible return of 4 percent to 6 percent on their investment at the time the partnership purchased the buildings, and a return of 8 to 12 percent, if the rent increase application was approved. The production of rental income was only an incidental consideration of the 969 Realty partnership. The partnership was formed primarily for the purpose of purchasing and holding property for sale to customers in the ordinary course of trade or business. The partnership held the properties in dispute primarily for sale to customers in the ordinary course of trade or business. The properties were not held for investment, and the partnership did not intend to hold them for investment purposes. The members of the 969 Realty Company partnership who are the petitioners are taxable at ordinary income rates on the gain realized upon the sale of the properties in 1958 to 969 Park Corporation. The partnership realized ordinary income from the disposal of its properties in 1958. There was no improper examination of the books and records of the petitioners and respective partnerships in contravention of section 7605(b), 1954 Code. De Masters v. Arend, 313 F. 2d 79 *160 (C.A. 9, 1963). Issue 2. 108 East 82nd Street Petitioners, Carl and Rosalie Schraubstader, and William and Elizabeth Reed Hamilton, each realized ordinary income from 108 East 82nd Street Associates during the taxable year 1958. Issue 3. 4 East 89th Street The partnership, known as Sarah Korein and Noah Friedland, purchased an apartment house located at 4 East 89th Street, New York City, on February 4, 1958, and sold it on October 1, 1958. Five of the petitioners herein had partnership interests in the Sarah Korein and Noah Friedland partnership. Their respective gains on the sale of the partnership property in 1958 were as follows: Docket
Share of
Number
Petitioner
Gain
2463-62
Harold Engelstein
$ 1,471.82
2472-62
Lawrence N. Friedland
4,133.30
2473-62
Ely Rabin
8,176.80
2474-62
Sarah Korein
21,423.48
2475-62
Irving Hagen
2,943.65
Total share of gain of the 5 part-
nership petitioners
$ 38,149.05
Total share of gain of those part-
ners not petitioners
72,072.35
Total gain
$110,221.40
Philip Bernstein, an employee of Brett, Wyckoff, Potter, Hamilton, Inc., first mentioned that the property at 4 East 89th Street *161 was available for purchase. This property was managed by the Brett, Wyckoff firm. The Korein and Friedland partnership reported an operating loss of $42,822.79 in its 1958 partnership return. The partners contributed cash in the total amount of $230,000 to the capital of the Korein and Friedland partnership at its commencement. The property sold by this partnership was held for sale to customers in the ordinary course of trade or business. Issue 4. Koch & Gould Partnership Petitioner, Theodore M. Greenberg, is a partner in the Koch & Gould partnership. No evidence relating to this partnership was submitted by the petitioner. Theodore M. Greenberg received ordinary income in the amount of $1,485.70 from the Koch & Gould partnership. Issue 5. Hart Street Mortgage Ely Rabin had an interest in the Hart Street mortgage from which he received income in the amount of $262.75. Irving Hagen testified that the Hart Street mortgage was a purchase money, second mortgage in the amount of $38,000. No evidence was submitted in support of Rabin's allegation that the amount of $262.75 received from his interest in the Hart Street mortgage is a long-term capital gain. Income *162 received by Ely Rabin in the amount of $262.75 from the Hart Street mortgage is ordinary income. Issue 6. Expense Deductions of Otto L. Tinklepaugh Otto L. Tinklepaugh claimed deductions for miscellaneous expenses in the amount of $542.10 in his 1958 return. Respondent disallowed deductions for expenses for alleged luncheons, etc., in the amount of $106; for alleged unreimbused business expenses in the amount of $190; and for alleged gifts to business associates in the amount of $85. The deductions disallowed total $381. Tinklepaugh was vice president and director of an advertising agency, J. M. Mathews, Inc. He was repaid by the agency for all expenditures paid by him with respect to existing clients. The claimed business expenses in issue were allegedly paid for prospective clients. Tinklepaugh testified that some of the people he took to lunch, took him to lunch more frequently than he took them to lunch. Tinklepaugh testified that some of the business expenses consisted of buying flowers for a funeral, Christmas cards, a Christmas luncheon for members of his staff, and for more lunches. Tinklepaugh testified that the expenditures for gifts to business associates consisted *163 of a wedding gift in the amount of $28.50, and gifts to his secretary, telephone operators, and mail boys. Tinklepaugh failed to prove that any of the expenses in the total amount of $381 constituted his ordinary and necessary business expenses. These miscellaneous expenses were personal expenses and are not deductible. Opinion Issue 1. 969 Realty Company The first question is whether the petitioners, members of the 969 Realty Company partnership, are taxable at ordinary income rates on the gain realized on the sale of the partnership's properties that were sold in 1958 to the 969 Park Corporation; or whether the gain is capital gain. The statutory notices set forth that the petitioners are not entitled to a tax free transaction in accordance with section 351(a), 1954 Code, and that the gain in dispute must be recognized. S. Klein On The Square, Inc., 14 T.C. 786, affd. 188 F. 2d 127, certiorari denied 342 U.S. 824. The amount of the partnership's gain on the sale of its properties to 969 Park Corporation has been stipulated. Respondent filed amendments to the answers requesting increased deficiencies in conformity with petitioners' *164 concession and the stipulation as to the gain. This issue presents the question whether certain properties purchased by the partnership on July 1, 1957, and transferred to 969 Park Corporation on October 31, 1958, for all of its issued, authorized, and outstanding stock, were held primarily for sale to customers in the ordinary course of trade or business. Respondent contends that the properties were held by the partnership for sale to customers in the ordinary course of its trade or business and that consequently the gain arose from the sale of noncapital assets. Section 1221(2), defines capital asset as follows: For purposes of this subtitle, the term "capital asset" means property held by the taxpayer (whether or not connected with his trade or business), but does not include * * *
(2) property, used in his trade or business, of a character which is subject to the allowance for depreciation in section 167, or real property used in his trade or business; * * * Section 1231(a) permits a taxpayer capital gain treatment for exchanges of property used in a trade or business and *165 held for more than 6 months, but section 1231(b) excludes from capital gain treatment property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business. The question presented has been before the courts frequently. There is no single rule of law that can be applied in determining the question. Whether the properties in question here were being held for sale or to produce investment income is essentially a question of fact, under which the petitioners had the burden of proof. In Alice E. Cohn, 21 T.C. 90 (1953), aff. 226 F. 2d 22 (C.A. 9, 1955), this Court stated (p. 99): The burden of proof is upon the petitioners to prove that the Commissioner's determination is in error. That is to say, they must prove that the 69 houses in question were not held primarily for sale to customers in the ordinary course of business * * *. The 969 Realty partnership was formed on June 21, 1957, and under the partnership agreement, the partnership was to terminate on May 31, 1970, unless sooner terminated. That provision may be regarded as an indication that the partners believed that within the 13-year, maximum life of the *166 partnership, they would dispose of the properties that they intended to purchase. However that may be regarded, the following facts are pertinent: On July 1, 1957, the partnership acquired two pieces of improved real estate, the land and buildings at 969 Park Avenue and 107 East 82nd Street. The partners contributed cash in the total amount of $470,000 to the partnership capital in the beginning. The partnership agreement states, in effect, in paragraph VIII C, that after distributions of $470,000 have been made or are available to all the partners, then during the continuance of the agreement all funds available for distribution, excluding only profits derived from rental income, shall be allocated and distributed as follows: (a) 5 percent to Brett, Wyckoff, Potter, Hamilton, Inc. (b) 2 1/2 percent to Sarah Korein (c) 92 1/2 percent to the limited partners in the ratio that each partner's original contribution bears to the original capital contributed by all of the partners. It is obvious that from the inception of the partnership Brett, Wyckoff, Potter, Hamilton, Inc. and Sarah Korein were to be given greater benefits than the individual partners. Petitioner, William H. Hamilton, *167 is the president of Brett, Wyckoff, Potter & Hamilton, and petitioner, Carl Schraubstader, is an employee of that firm. The partnership was organized in the office of Hamilton; he obtained several of the partners, as did Sarah Korein, also. It is noted that each of the petitioners, Rabin, Korein, and Hagen, listed their occupations on their respective tax returns as "real estate". It appears that many, if not all, of the petitioners had had experience in real estate. At the time the partnership purchased the properties in issue it intended to file a hardship claim to increase the rents. On September 9, 1957, the partnership made application to the State of New York Temporary Housing Commission for increase of maximum rents. On April 28, 1958, the Temporary State Housing Commission issued an order denying the application for increased rents. The purpose of this application, respondent contends, was to make purchase of the properties more appealing to a prospective purchaser or purchasers. Respondent argues that the partners intended at all time to dispose of the properties. This Court has observed in similar cases that *168 the test which deserves the greatest weight is the purpose for which the particular property was held during the period in dispute, and that whether or not the property is used in a trade or business is determined as of the date the property was sold or exchanged. Whether property is "held primarily for sale", as that phrase is used in the statute, means that it is held "essentially" for sale. In Rollingwood Corp. v. Commissioner, affirming a Memorandum Opinion of this Court 190 F. 2d 263 (C.A. 9, 1951), the Court stated (p. 266): Although the requirements of the statute are to some extent overlapping, the emphasis in this case is whether the houses were held primarily for sale or primarily for rent. Petitioners contend that the word "primarily" means "principal" or "chief" while the Commissioner contends it means "essential" or "substantial". For reasons hereinafter stated we think the latter view is more consonant with the legislative policy. The court also noted that in the event property is bought with the dual intention of holding it for sale or rent, depending upon which proves to be more profitable, then one of the essential purposes of the acquisition is to *169 hold the property for sale. In this case it is concluded that the petitioners have not established, other than through their self serving declarations, that there was an intention, at any time, to hold the properties for rental and therefore investment purposes. Even assuming, arguendo, that the properties were acquired for the dual purposes of sale or rent, it is clear from the record that the production of rental income was at best only an incidental consideration. Certainly, when the application for increased rents was denied, the partnership held the properties for the sole purpose of selling them at the best available price. Upon the entire record, it is so concluded. On October 31, 1958, the 969 Park Corporation issued 36,812 shares of its capital stock, which was all of its issued and authorized stock, to 969 Realty Company in exchange for its properties. The report of the title closing on October 31, 1958, of the premises 969 Park Avenue and 107 East 82nd Street, between 969 Realty Company, as seller, and 969 Park Corporation, as purchaser, contained a certification by Brett, Wyckoff, Potter & Hamilton that of the 36,812 authorized shares of capital stock of 969 Park Corporation, *170 10,808 shares had been sold. That is to say, the partnership had committed itself prior to October 31, 1958, the date that title to the properties was transferred to 969 Park Corporation, to sell 10,808 shares out of the 36,812 shares it was entitled to receive in exchange for the transfer of the properties. The partnership treated the transfer of its property, on its 1958 partnership return, as a tax free transaction under section 351. Petitioners have conceded that section 351 is inapplicable because about 30 percent of the stock had been sold by the partnership at the time it was about to receive the stock in exchange for its properties. S. Klein On The Square, Inc., supra. During the year 1958, the partnership had an operating loss of $40,195.01, but it realized a gain of $563,273.46 upon the transfer of its properties to 969 Park Corporation. The loss from operations, together with the large gain upon the transfer of the properties indicates, in our opinion, that the partners had planned to sell the properties and not to operate them as rental properties. The nature of the petitioners' business must be determined. Notwithstanding their oral testimony, there *171 is no corroborating evidence to support the petitioners' contention that the partnership was formed to produce long-term investment income. Upon the entire record, there remains no doubt about the matter, in our opinion, that after the application for rent increase was denied, the partnership's sole intent was to dispose of the property. It is concluded that the partnership was in the business of selling its properties in the ordinary course of trade or business. Upon the entire record, we are not able to hold that the 969 Realty partnership was a syndicate created to purchase properties for investment, or that the properties in dispute were held for investment. Petitioners have failed to sustain their burden of proof, and their contentions, to the above effect, are rejected. Under this issue the respondent's determinations are sustained. The gain is taxable as ordinary income. Issue 2. 108 East 82nd Street This issue involves the petitioners Carl and Rosalie Schraubstader, Docket No. 2467-62, and William and Elizabeth Reed Hamilton, Docket No. 2469-62. Petitioners had the burden of proof. No evidence was offered by the petitioners under this issue. Because of failure of proof, *172 respondent's determinations are sustained. W. B. Mayes, Jr., 21 T.C. 286, 291 (1953). The petitioners who are members of the partnership, 108 East 82nd Street Associates, are taxable at ordinary income rates on the gain realized on the sale of the property of the partnership in 1958. Issue 3. 4 East 89th Street The question is whether the petitioners, who are members of the partnership consisting of Sarah Korein, Noah Friedland, and others, are taxable at ordinary income rates on the gain realized upon the sale of the property of the partnership in 1958 located at 4 East 89th Street. The partnership, consisting of Sarah Korein, Noah Friedland, and others, purchased an apartment house at 4 East 89th Street on February 4, 1958, and sold it on October 1, 1958. The partners invested the total sum of $230,000 in cash to obtain the property. Among the 7 partners obtained by Sarah Korein, there were Ely Rabin, Irving Hagen, and Harold Engelstein who, also, were partners in 969 Realty Company. Philip Bernstein, an employee of Brett, Wyckoff, Potter & Hamilton, first mentioned the fact that the property (which was managed by Brett, Wyckoff, Potter & Hamilton) was available *173 for purchase. The partnership reported an operating loss in the amount of $42,822.79 on the 1958 partnership return, and a gain upon the sale of the property in the amount of $110,221.40. The petitioners claim that the partnership had trouble in obtaining a favorable mortgage. However, the 969 Realty Company, properties were sold on October 31, 1958, at a profit of $563,273.46, and several of the partners in the Sarah Korein and Noah Friedland partnership were also members of the 969 Realty partnership. We are not convinced by the evidence that if it was intended that 4 East 89 would be held as investment property, it would not have been possible to obtain sufficient money to hold the property. The partnership held the 4 East 89th Street property less than 9 months and made a profit on the sale in an amount in excess of $110,000 on a cash investment of $230,000. The test which must be given the greatest weight is the purpose for which the property was held. We are not persuaded that the partnership held this property for investment, and conclude that it was purchased and held for sale to customers in the ordinary course of trade or business. Alice E. Cohn, supra. *174 Petitioners failed in their burden of proof. Respondent's determinations are sustained. Issue 4. Koch & Gould Partnership The question is whether the petitioner, Theodore N. Greenberg, received ordinary income from the partnership of Koch & Gould, rather than capital gain. Petitioner had the burden of proof. He did not offer any evidence. He failed in his burden of proof. Therefore; the determination made by respondent is sustained. W. B. Mayes, Jr., supra.
Issue 5. Hart Street Mortgage The question is whether income received by Ely Rabin and Sonia Rabin from the Hart Street mortgage during the taxable year 1958 is ordinary income. The burden of proof was upon the petitioners. They had the burden of overcoming the correctness of respondent's determination by introducing evidence sufficient to show that the determination was wrong. Halle v. Commissioner, 175 F. 2d 500 (C.A. 2, 1949). Irving Hagen testified that the Hart Street mortgage was a purchasemoney, second mortgage in the amount of $38,000. No evidence was submitted other than Hagen's testimony *175 and a copy of his 1957 return which reported the sale of the property upon which the mortgage was obtained. The evidence is not sufficient to establish that the $262.75 received by the Rabins is capital gain rather than ordinary income. For failure of proof, respondent's determination is sustained. Issue 6. Expense Deductions of Otto L. Tinklepaugh The question is whether the respondent properly disallowed deductions for alleged business expenses of Otto L. Tinklepaugh in the amount of $381 for the taxable year 1958. The burden of proof was upon the petitioner. Tinklepaugh claimed deductions for miscellaneous expenses in the amount of $542.10 on his return, of which $381 was disallowed. The disputed deductions are expenses for luncheons, etc., in the amount of $106; alleged unreimbursed "business expenses" claimed to relate to the production of income in the amount of $190; and the cost of gifts to business associates in the amount of $85. Tinklepaugh was the vice president and director of an advertising agency, J. M. Mathews, Inc. He was repaid by the agency for all expenditures which he paid for clients. The expenses in issue were allegedly paid in connection with "prospective *176 clients". Petitioner testified that some of the people that he took out to lunch took him to lunch oftener. The alleged expenses claimed as expenses for the production of income consisted of flowers for a funeral, Christmas cards, a Christmas luncheon for members of petitioner's staff, more lunches, etc. The alleged gifts to business associates consisted of a wedding gift costing $28.50, and gifts to petitioner's secretary, telephone operators, and mail boys. It is concluded that petitioner failed to prove that any of the expenditures in issue are deductible under any provision of the Code; it is concluded that they were personal expenditures, for which deductions are not allowed under section 262 of the Code. Respondent allowed petitioner deductions for his safe-deposit box, professional dues, and certain expenses incurred in connection with business publications and services. Petitioner failed to prove that he is entitled to any additional deductions. Respondent's determinations are sustained. Decisions will be entered under Rule 50. Footnotes
1. The proceedings of the following petitioners have been consolidated herewith: Harold and Dora Engelstein, Docket No. 2463-62; Otto and Dorothy Tinklepaugh, Docket No. 2464-62; Julius and Miriam Bernstein, Docket No. 2465-62; Earle G. May, Docket No. 2466-62; Carl and Rosalie Schraubstader, Docket No. 2467-62; Edward and Stella Klein, Docket No. 2468-62; William and Elizabeth Hamilton, Docket No. 2469-62; Theodore and Beatrice Greenberg, Docket No. 2470-62; Irving and Rose Finkel, Docket No. 2471-62; Lawrence and Alice Friedland, Docket No. 2472-62; Ely and Sonia Rabin, Docket No. 2473-62; Isidor and Sarah Korein, Docket No. 2474-62; and Irving Hagen, Docket No. 2475-62.↩
2. The petitioners in 1958 maintained their respective residences in either Manhattan, Brooklyn, or a place close to Manhattan. Each deficiency notice was issued by the district director of internal revenue for the Manhattan District.↩